EDE, ADMR., APPELLANT, *v.* ATRIUM SOUTH OB–GYN, INC. ET AL., APPELLEES.

[Cite as *Ede v. Atrium S. OB–GYN, Inc.* (1994), 71 Ohio St.3d 124.]

(No. 93–1367—Submitted September 14, 1994—Decided December 14, 1994.)

*The Okey Law Firm, L.P.A., Steven P. Okey* and *Allen G. Carter, Sr.,* for appellant.

*Fritz Byers; Jacobson, Maynard, Tuschman & Kalur, David M. Best* and *Janis L. Small,* for appellees.

· *Maloon, Maloon & Barclay Co., L.P.A.,* and *Jeffrey L. Maloon; Zagula, Hill & Dittmar* and *Nick Dittmar,* urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

PFEIFER, J.  Evid.R. 411 states that while evidence of insurance is not admissible upon the issue of liability, the rule "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

In *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, paragraph one of the syllabus, this court held that Evid.R. 411 allows cross-examination on facts which may show bias, interest, or prejudice of a witness, even though it may disclose the existence of liability insurance in a personal injury action.

This court has also held that "[t]he scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.  In order to constitute reversible error, the limitation on cross-examination by the trial court must be unreasonable, arbitrary, or unconscionable.  *Calderon, supra,* at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012.

The other relevant Rule of Evidence in this case is Evid.R. 403, which states:

"(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The trial court in this case pointed to Evid.R. 403 in determining that the issue of the commonality of interests between Drs. Dakoske and Schneider could not be demonstrated through evidence of a common insurance carrier. The trial court ruled that the danger of prejudice outweighed the probative value of such testimony. We find that determination to be unreasonable, and therefore reversible error, for two reasons.

First, the trial court did not appreciate the probative value of establishing that Dakoske and Schneider were both insured by PIE. The trial court focused its inquiry on only one thing—whether a doctor's premiums could be raised by PIE if the doctor refused to testify on behalf of another PIE-insured doctor. Thus, the trial court sought to determine whether PIE coerced Schneider's testimony, but did not seem to consider Schneider's personal bias resulting from his insurance relationship. Satisfied by Dakoske's attorney's assurance that Schneider was not being coerced by PIE, the trial court failed to consider other possible biases created by Schneider's relationship with PIE. The trial court was not responsive to appellant's argument that as a fractional part-owner of PIE, Schneider's own premiums might fluctuate due to the result of the case. Such testimony would have been probative of bias.

Second, the trial court erred by grossly overestimating to what extent testimony that Dakoske was insured would prejudice the jury. The second sentence of Evid.R. 411 exists for a reason—it recognizes that testimony regarding insurance is not always prejudicial. However, too often courts have a Pavlovian response to insurance testimony—immediately assuming prejudice. It is naive to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. Our Rules of Evidence are designed with truth and fairness in mind; they do not require that courts should be blind to reality.

Evid.R. 102 sets forth the purpose of the Ohio Rules of Evidence:

"The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. * * *"

Given the sophistication of our juries, the first sentence of Evid.R. 411 ("[e]vidence that a person was or was not insured against liability is not admissible upon the issue [of] whether he acted negligently or otherwise wrongfully") does not merit the enhanced importance it has been given. Instead of

juries knowing the truth about the existence and extent of coverage, they are forced to make assumptions which may have more prejudicial effect than the truth.

Thus, the second sentence of Evid.R. 411, which allows courts to operate in a world free from truth-stifling legal fictions, ought to be embraced. In such instances as the case at hand, truth should win out over a naively inspired fear of prejudice.

Therefore, we hold that in a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause. Thus, in the present case, the trial court acted unreasonably in excluding evidence regarding the commonality of insurance interests of Drs. Dakoske and Schneider. The judgment of the court of appeals is reversed and the cause is remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

A.W. SWEENEY, DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., concurs in the syllabus and judgment.

WRIGHT, J., dissents.

DOUGLAS, J., concurring. I concur with the well-reasoned opinion of the majority. I write separately to make just two points. First, interested readers should compare the discussion of Civ.R. 61, in fn. 1 of the dissent, with the discussion of Civ.R. 61 in the dissent of *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615. One cannot have it both ways.

Second, Evid.R. 616 could also be cited in support of the majority opinion. By its clear terms it would seem to apply.

WRIGHT, J., dissenting. I would affirm the judgment of the court of appeals because I do not believe that the trial judge abused his discretion in this case. The trial judge properly considered Evid.R. 403 and 411 in disallowing the line of questioning at issue. The second sentence of Evid.R. 411 does *not* require the admission of evidence of insurance for the purpose of showing bias. It merely states that the exclusion of such evidence is not required. The trial judge, therefore, properly turned to Evid.R. 403 and determined that the danger of unfair prejudice arising from the jury's knowledge that the defendant had medical malpractice insurance substantially outweighed the probative value of informing the jury of a commonality of insurance interests between the defendant and the defendant's expert witness.

In addition, as discussed below, I believe the majority makes two fundamental errors. First, the majority's *per se* rule in the syllabus effectively divests trial judges of their discretion regarding "evidence of a commonality of insurance interests between a defendant and an expert witness." This view is in direct conflict with the express language of Evid.R. 403 and the syllabus in *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. Second, the majority, in essence, has improperly modified the language of Evid.R. 403 and 411 without following the rulemaking procedures required by the Ohio Constitution.[1]

In the text of the opinion, the majority quite properly recognizes that "[t]he scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the *sound discretion of the trial court*." (Emphasis added.) *Calderon, supra,* syllabus. However, the law contained in *Calderon, supra,* is at war with the syllabus law announced in this case. The majority cannot have it both ways, and this court should not indulge itself in an exercise of confusion.

It is well settled that an appellate court may not substitute its judgment for that of a trial court. As we stated in *Calderon,* "the question before this court is not whether the trial court ruled as we would have ruled if confronted with these questions, but whether the court abused its discretion so as to prejudice [appellant]." *Id.* at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012. A trial court does not

---

1. Perhaps inadvertently, the majority has reversed the judgment of the court of appeals and remanded this cause in violation of Civ.R. 61, which states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

This means that, in order for a reviewing court to reverse a judgment concerning a matter within a court's discretion, the reviewing court must find not only that an abuse of discretion occurred below, but that such abuse of discretion actually prejudiced the substantial rights of the party seeking reversal. Assuming for the sake of argument that the trial court abused its discretion in this case, I do not believe that the exclusion of "evidence of a commonality of insurance interests" between defendant and defendant's expert witness affected the ultimate outcome of the case so as to prejudice the substantial rights of Ede.

I am puzzled by the suggestion in the concurring opinion that my discussion of Civ.R. 61 in this footnote is somehow inconsistent with the discussion of Civ.R. 61 in my dissent in *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615. In both opinions I adhere to the principle that an error must prejudice the substantial rights of the parties in order to constitute *reversible* error. A finding of *reversible* error obviously depends on the unique *facts* of each case. In this case, the alleged error did not prejudice the substantial rights of the parties. In *Continental, supra,* the error did prejudice the substantial rights of the parties.

abuse its discretion unless its decision is "unreasonable, arbitrary or unconscionable." *Id.* at 220, 24 O.O.3d at 323, 436 N.E.2d at 1010.

Although I might have ruled differently than the trial judge (especially since the judge could have restricted the evidence to its proper scope through a jury instruction under Evid.R. 105), I cannot say that the trial judge acted unreasonably in this case. We should not say that a trial judge abuses his discretion merely because he "was not responsive" to all of appellant's arguments. As Justice Oliver Wendell Holmes stated: "[M]any honest and sensible judgments * * * express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions;—impressions which may lie beneath consciousness without losing their worth." *Chicago, B. & Q. Ry. v. Babcock* (1907), 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636, 640.

In applying Evid.R. 403, a trial court must have broad discretion because of the practical problems inherent in the balancing of intangible and indefinable factors, such as unfair prejudice and probative value. The task of assessing potential prejudice is one for which a trial judge, in light of his familiarity with all the evidence in a particular case, is well suited. Unlike reviewing judges who must look at a cold record, a trial judge is in a superior position to evaluate the impact of the evidence because he sees the mannerisms and reactions of the jurors, witnesses, parties, and attorneys.

Although the majority opinion gives lip service to the well-established rule that a reviewing court may not reverse the decision of a trial judge regarding the admissibility of evidence during cross-examination unless the trial judge abuses his discretion, the *per se* rule found in the syllabus simply ignores this standard. By stating that "evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice," the majority divests all trial judges of the discretion conferred upon them by Evid.R. 403 and 611(A). This appears to be result-oriented law run amok.

In essence, the majority has created a new evidence rule in *direct* conflict with Evid.R. 403 and, in doing so, has circumvented the proper rulemaking procedures required by the Ohio Constitution. Section 5(B), Article IV of the Ohio Constitution, in relevant part, provides: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *. Proposed rules *shall* be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof * * *. Such rules shall take effect on the following first day of July, *unless prior to such day the general assembly adopts a concurrent resolution of disapproval.*"

(Emphasis added.) The majority's new procedure for changing the evidence rules is contrary to law.

For the foregoing reasons, I respectfully dissent.