OPINION
{¶ 1} Christopher Kremer appeals from a judgment of the Montgomery County Court of Common Pleas, which found in favor of Michelle Rowse on Kremer's negligence claim arising out of an automobile accident.
 {¶ 2} The record reveals the following facts.
 {¶ 3} At approximately 4:30 p.m. on October 23, 2002, Kremer was traveling southbound on Interstate 75 in his 1993 Chevrolet pickup truck. Rowse was traveling in the same direction behind Kremer in a 1995 Nissan Altima. Near the Springboro Pike/State Route 741 exit, Kremer observed that traffic in front of him had slowed down. Kremer applied his brakes and came to a stop. Rowse's vehicle collided with the back of Kremer's truck.
 {¶ 4} On October 21, 2004, Kremer brought suit for negligence against Rowse. Rowse admitted that she had been in an accident with Kremer but contested Kremer's allegations that she had been negligent and that he had suffered injuries as a result of the accident. On June 16, 2005, an arbitration hearing on the issues of causation and damages was held before a court-appointed arbitrator, who recommended an award in favor of Kremer in the amount of $11,000. Rowse appealed the arbitration report to the trial court. Trial was scheduled for August 9, 2005.
 {¶ 5} Prior to trial, Rowse sought to preclude Kremer from making any reference to the fact that she had liability insurance. Kremer argued that he was entitled to demonstrate that Rowse's medical expert, Kenneth A. Jenkins, D.C., was biased in favor of Allstate because he performed multiple reviews for Allstate each year, he was paid for his services directly by Allstate, and correspondence with Allstate contributed to his opinion regarding Kremer. Prior to the presentation of evidence at trial, the court sustained Rowse's motion. Prior to the display of Dr. Jenkins's videotaped testimony to the jury, the court reiterated its ruling and ordered that certain portions of Jenkins's testimony not be played for the jury. At the conclusion of trial, the jury found in favor of Rowse and awarded no damages to Kremer.
 {¶ 6} Kremer raises two assignments of error on appeal.
 {¶ 7} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF/APPELLANT IN BARRING HIM FROM CROSS EXAMINING THE DEFENDANT'S EXPERT REGARDING HIS INVOLVEMENT WITH HER INSURER."
 {¶ 8} In his first assignment of error, Kremer argues that the trial court erred when it denied him the opportunity to cross-examine Rowse's medical expert about his relationship with Rowse's automobile liability insurer, Allstate.
 {¶ 9} In the redacted portion of his cross-examination of Dr. Jenkins, counsel for Kremer elicited testimony that Allstate, Rowse's liability insurer, had paid Dr. Jenkins to perform the review of Kremer's medical records, and that Dr. Jenkins performs ten to fifteen reviews per year for Allstate. Dr. Jenkins stated that he received approximately $250 for his review. Dr. Jenkins further testified that his report had been submitted to Allstate and that the company made the ultimate decision whether to pay the claim. Dr. Jenkins indicated that he worked for "[p]retty much any and all major insurance companies." He denied that it was in his financial interest to provide the insurance companies with a favorable report, and he stated that he received his fee from the insurance company regardless of his opinion in the case. Dr. Jenkins testified that performing the review took time away from his chiropractic practice.
 {¶ 10} With regard to his review of Kremer's records, Dr. Jenkins acknowledged that his report had stated that he had reviewed a letter from Allstate. Although Dr. Jenkins first called the letter "a brief synopsis of the records that were contained," he explained that the letter had listed the records that had been provided to him. Dr. Jenkins agreed with the characterization that the letter contained a list rather than a synopsis of the records to be reviewed. He indicated that his office would go through the records, process them, and itemize them.
 {¶ 11} On appeal, Kremer contends that the redacted cross-examination was necessary to show bias and that such questioning was permitted under Civ.R. 411. Rowse responds that the references to Allstate were highly prejudicial to her and were properly excluded under Civ.R. 403(A). She further asserts that the court was not required by Civ.R. 411 to allow the cross-examination of Dr. Jenkins regarding his relationship with Rowse's liability insurer, and that the trial court did not abuse its discretion by redacting those portions of the cross-examination.
 {¶ 12} Evid.R. 411 provides:
 {¶ 13} "Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."
 {¶ 14} Under Evid.R. 403(A), relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "The scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." Calderon v. Sharkey (1982), 70 Ohio St.2d 218,436 N.E.2d 1008, syllabus; Ede v. Atrium South OB-GYN, Inc.
(1994), 71 Ohio St.3d 124, 126, 642 N.E.2d 365.
 {¶ 15} Rowse asserts that the supreme court's opinions inEde, supra, and Davis v. Immediate Med. Serv. (1997),80 Ohio St.3d 10, 684 N.E.2d 292, provide for the admissibility of evidence regarding insurance coverage in order to establish bias only in select circumstances. In Ede, the supreme court held that "in a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." 71 Ohio St.3d at syllabus. In Davis, another medical malpractice action, the supreme court extended that holding, stating that "[i]n an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testified favorably for that defendant." 80 Ohio St.3d at 16. In light of these rulings, Rowse argues that a commonality of insurance between the expert and any defendant is required in order for the evidence of bias to be sufficiently probative to outweigh any potential prejudice. See Evid.R. 403(A).
 {¶ 16} We disagree. Ede and Davis give no indication that they were intended to be interpreted as Rowse proposes. Rather, as stated by the supreme court: "Given the sophistication of our juries, the first sentence of Evid.R. 411 * * * does not merit the enhanced importance it has been given. Instead of juries knowing the truth about the existence and extent of coverage, they are forced to make assumptions which may have more prejudicial effect than the truth. Thus, the second sentence of Evid.R. 411, which allows courts to operate in a world free from truth-stifling legal fictions, ought to be embraced." Ede,71 Ohio St.3d at 127-28.
 {¶ 17} Moreover, although Ede and Davis both address bias due to a commonality of insurance between an expert and a defendant, there is more than one way to establish bias. It is not unreasonable for counsel to argue that an expert who obtains a significant financial benefit from a continuing relationship with an insurance company might look at claims more favorably to the insurance company so that the company would continue to consult with that expert. In our view, in cases such as the one sub judice, evidence that an expert might have been influenced in this manner is equally probative of bias as is evidence of a commonality of insurance. It is generally accepted that cross-examination of an expert may cover the expert's relationship with the party for whom he or she is testifying, the fee that is paid to the expert, and the expert's proclivity to testify in favor of plaintiffs or defendants. The fact that the expert has been hired by an insurance company rather than by a party directly does not remove these issues from the playing field. In our judgment, Kremer was entitled under Civ.R. 411 to offer the redacted portion of Dr. Jenkins's testimony.
 {¶ 18} Rowse asserts that the trial court properly excluded portions of Kremer's cross-examination of Dr. Jenkins under Civ.R. 403. She contends that Kremer "made chronic references [to Allstate] in an overt, unapologetic attempt to inform the jury, repeatedly, that Allstate, not the Appellee, would be the entity that ultimately paid any verdict rendered." Rowse further argues that Kremer could have tailored his cross-examination to address "a more general bias aimed at defense counsel or defendants in general."
 {¶ 19} Upon review of the record, we disagree with Rowse's characterization of the redacted portion of the cross-examination. Kremer's counsel's questions were directed to Dr. Jenkins's arrangement with Allstate to perform peer reviews of medical records. We find no suggestion that insurance was mentioned by Kremer in an attempt to influence the jury in its liability determination or to increase the amount of damages it might award. Although Kremer could have permissibly questioned Dr. Jenkins about any proclivity he might have had to testify in favor of defendants, that potential proclivity is not the same as having a pecuniary interest in reaching opinions favorable to an insurer due to an established relationship with the insurance company. Thus, we disagree that questions regarding a defendant-oriented bias can necessarily be substituted for questions regarding bias based on an ongoing business relationship. We find no evidence in the record that the mention of Allstate in this context would prejudice Rowse to such as degree that exclusion of the redacted cross-examination was necessary. See Costell v. Toledo Hosp. (1992),82 Ohio App.3d 393, 404-05, 612 N.E.2d 487. Although the scope of Kremer's cross-examination of Dr. Jenkins on the questions of his bias and pecuniary interest are matters generally left to sound discretion of the trial court, the trial court erred when it excluded the entirety of Kremer's cross-examination regarding Dr. Jenkins's relationship with Allstate.
 {¶ 20} Although the trial court should have permitted the cross-examination of Dr. Jenkins regarding his pecuniary relationship with Allstate, we do not find that the exclusion of that cross-examination constitutes reversible error. In order for an erroneous evidentiary ruling to be reversible, the error must have been prejudicial to the appellant. See State v. Smith,
Montgomery App. No. 20828, 2006-Ohio-45, ¶ 34. As stated above, Dr. Jenkins testified that he worked for all of the major insurance companies, not just Allstate. He denied that he had a pecuniary interest in providing favorable reports and stated that he received his fee from the insurance company regardless of his opinion in the case. He stated: "I have had more than my fair share of cases that have been sent to me that I've advised to pay. * * * So that's not really fair for you to even make or draw an assumption such as that." Dr. Jenkins further indicated that he had an active chiropractic practice in addition to providing peer reviews. Upon review of the record, we find no reasonable possibility that the outcome of the trial would have been different had the cross-examination been viewed by the jury.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} II. "THE VERDICT AWARDING MR. KREMER NO DAMAGES IN A CASE INVOLVING A REAR END AUTO ACCIDENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} In his second assignment of error, Kremer claims that the jury's award of no damages was against the manifest weight of the evidence.
 {¶ 24} In reviewing a claim that the judgment is not supported by the evidence, we are guided by the holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see Lykins v. Miami ValleyHosp., Montgomery App. No. 19784, 2004-Ohio-2732, at ¶ 112. "Furthermore, we must presume the findings of the trier of fact are correct because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of the testimony." Lykins, supra, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.
 {¶ 25} Kremer asserts that the jury's determination that his injuries were not caused by the accident was unsupported. Kremer notes his family doctor and his chiropractor indicated that the injuries were related to the accident. Kremer testified that he felt very sore starting a few hours after the accident, and that he was only able to work a limited amount on the following day. Kremer states that the only contradictory evidence was provided by Dr. Jenkins, who concluded upon a review of the medical records that "there was no injury associated with the accident of October the 23rd, 2002."
 {¶ 26} According to Kremer's medical records, Kremer sought treatment from his primary care physician on October 25, 2002, due to the auto accident. The physician noted that Kremer "[i]nitially felt fine but then later on that night had significant pain and stiffness to the neck, especially to the right side. He has had some problems with his right cervical neck in the past which had completely resolved following physical therapy as noted above." Kremer was diagnosed with an acute cervical strain secondary to a motor vehicle accident. On February 5, 2003, Kremer again saw his physician, complaining of a flare-up of right neck pain over the last several days. The doctor recorded that Kremer had been in an automobile accident as documented on October 25, 2002, and that Kremer had "[p]erhaps slept on it wrong the other night initiating this flare up."
 {¶ 27} According to the testimony of Michael S. Harker, D.C., Kremer sought chiropractic treatment beginning on February 2003, complaining of pain in his neck, upper back pain, and difficulty turning his neck from side to side. Dr. Harker's examination revealed a strain/sprain of the cervical spine and thoracic spine. In Dr. Harker's opinion, Kremer's pain was caused by the October 23, 2002 accident. Due to the severity of Kremer's pain, Dr. Harker did not believe that Kremer's pain was based on sleeping on his neck wrong. Dr. Harker acknowledged that he had previously treated Kremer and that he had adjusted Kremer's neck during those visits.
 {¶ 28} Reviewing Kremer's medical records, Dr. Jenkins concluded that Kremer did not suffer an injury as a result of the accident. He reasoned:
 {¶ 29} "[W]e're looking at about three months later, that Mr. Kremer went to his chiropractor; and it was within these records that they indicated that he was there as a result of neck stiffness and it's been kind of an off and on situation. He indicated that he has a hard type of labor, work, what have you. He bends in awkward positions and such.
 {¶ 30} "And there was a statement here, how long has it been since you really felt good, and Mr. Kremer appears to have written before the accident. So, again, this was one indication — or not one, but one of the indications that there was really a chronicity being demonstrated, that this is an ongoing problem that Mr. Kremer had. And so basically he was there and he attributed it to inflamed muscles in his neck.
 {¶ 31} "* * *
 {¶ 32} "If you go back, there were records from this physiotherapy group that predated the accident itself; and in a report of November 16, 2001, it was indicated in here that these were the exact same, identical complaints, that he had symptoms all on the right side and that it was specific to the neck as well as the upper back."
 {¶ 33} Dr. Jenkins further testified that flare-ups as described in the medical records can occur due to "life in general" and without a traumatic event.
 {¶ 34} We cannot conclude that the jury clearly lost its way when it apparently credited the testimony of Dr. Jenkins over that of Dr. Harker. In light of the fact that Kremer had suffered from neck pain prior to the auto accident and had not sought treatment from his primary care physician or chiropractor between October 25, 2002, and February 2003 — a period of more than three months — the jury could have reasonably believed that Kremer did not suffer an injury due to the accident and that the February 2003 treatment was due to a flare-up of a previous condition.
 {¶ 35} The second assignment of error is overruled.
 {¶ 36} The judgment of the trial court will be affirmed.
Brogan, J. and Fain, J., concur.