OPINION
{¶ 1} Jeffrey S. Cummins, administrator of the estate of Marcia Cummins, appeals from the trial court's entry of final judgment in favor of appellees Peter Pavlina, M.D., and *Page 2 
Kettering Cardiothoracic and Vascular Surgeons, Inc., following a jury trial in this medical-malpractice action.
 {¶ 2} Cummins advances six assignments of error on appeal. First, he contends the trial court erred in refusing to limit the number of defense expert witnesses, resulting in unfairly prejudicial and needlessly cumulative testimony. Second, he claims the trial court erred in prohibiting cross examination of defense expert witnesses regarding their commonality of malpractice insurance with defendant Pavlina. Third, he asserts that the trial court erred in partially excluding and limiting cross examination of defense expert witnesses regarding their financial incentive to testify for the appellees. Fourth, he argues that the trial court erred in limiting cross examination of appellee Pavlina concerning preoccupation with another patient while caring for decedent Marcia Cummins. Fifth, he contends the trial court erred in refusing to give a proposed jury instruction regarding commonality of insurance between appellee Pavlina and his expert witnesses. Sixth, he claims the cumulative effect of the foregoing errors deprived him of a fair trial.
 {¶ 3} The present appeal stems from a September 10, 2004 coronary artery bypass surgery performed on decedent Cummins by Thomas Merle, M.D. Following surgery, the decedent was placed in the intensive-care unit (ICU) at Kettering Medical Center. Responsibility for her care transferred to Dr. Merle's partner, appellee Pavlina, who was on call for the weekend. Within the ICU, the decedent was monitored initially by nurse Mary Wagoner and later by nurse Wanda Yerian. At approximately 7:40 p.m., Yerian noted that some of the decedent's vital signs had decreased. As permitted by an ICU standing order, Yerian responded by administering albumin to treat hypovolemia, or low fluid volume, a common post-operative condition among heart-surgery patients. Thereafter, at approximately *Page 3 
8:50 p.m., Dr. Pavlina was in the ICU checking on other patients. Yerian spoke with him and updated him regarding the decedent's vital signs and condition. Based on this discussion, Dr. Pavlina ordered two units of blood and more albumin to treat hypovolemia and subsequently went home for the night.
 {¶ 4} At approximately 11:55 p.m., Yerian noted that the decedent was restless and complaining of shortness of breath. The decedent's heart rate had increased, and Yerian observed a sudden drainage of blood from the decedent's chest tubes. A few minutes later, Yerian noted that the decedent was not breathing. She called Dr. Pavlina, who returned to the hospital. Upon his arrival, hospital employees were performing chest compressions. Dr. Pavlina immediately conducted emergency surgery and discovered that the decedent had suffered cardiac arrest due to bleeding around her heart. He also determined that the bleeding had resulted from a clip coming off a side branch of a grafted artery. He stopped the bleeding by placing a new clip on the artery. Although Dr. Pavlina managed to stabilize the decedent, she died a couple of hours later after suffering a second cardiac arrest.
 {¶ 5} Appellant Cummins' theory at trial was that the bleeding from the dislodged clip started prior to 8:50 p.m. and steadily worsened. He presented evidence that Dr. Pavlina should have reviewed the decedent's chart and visited the decedent personally rather than simply speaking to nurse Yerian. According to Cummins, Dr. Pavlina would have discovered the leaking artery and saved the decedent if he had taken these steps. For his part, Dr. Pavlina presented evidence that the decedent experienced a sudden, catastrophic bleed that began at 11:55 p.m. rather than a slowly progressing bleed that began earlier in the evening. Dr. Pavlina also presented evidence that he acted within the applicable standard of care by receiving an update from nurse Yerian at 8:50 p.m. *Page 4 
 {¶ 6} On March 30, 2007, a jury returned a unanimous defense verdict, finding no malpractice by Dr. Pavlina.[1] In accordance with the jury's verdict, the trial court entered final judgment in favor of Dr. Pavlina and Kettering Cardiothoracic and Vascular Surgeons, Inc. This timely appeal followed.
 {¶ 7} In his first assignment of error, Cummins contends the trial court erred in refusing to limit the number of defense expert witnesses. This argument concerns the trial court's decision to allow the defense to present testimony from four medical experts. The first two, Russell Vester, M.D., and Randall Miller, M.D., were retained prior to trial. The other two medical experts were Dr. Pavlina, the defendant in the case, and his partner, Dr. Merle, who performed the bypass surgery on the decedent. In a March 16, 2007 motion in limine, Cummins urged the trial court to limit the number of medical experts the defense could call to testify. In support, he cited Evid. R. 403(A) and (B). The trial court overruled the motion a few days later based on unspecified "discussions" with counsel.[2] Cummins later unsuccessfully renewed his objection during trial.
 {¶ 8} On appeal, Cummins asserts that at least Dr. Vester's testimony should have been excluded under Evid. R. 403(A), which provides that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Cummins argues that the probative value of Dr. Vester's testimony was substantially outweighed by the danger of unfair prejudice. According to Cummins, the probative value of Dr. Vester's testimony was low because the other doctors *Page 5 
addressed the same "facts, issues and opinions." Cummins asserts that the danger of unfair prejudice was high because the medical testimony was repeated several times and the jury may have been influenced by the fact that more doctors agreed with the defendants than the plaintiff.
 {¶ 9} Cummins also contends either Dr. Vester's or Dr. Miller's testimony should have been excluded under Evid. R. 403(B), which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Cummings argues that expert testimony from both doctors was needlessly cumulative because they had similar qualifications and offered opinions on essentially the same issues.
 {¶ 10} We review the trial court's ruling on admissibility under Evid. R. 403(A) and (B) for an abuse of discretion. State v. Smiddy, Clark App. No. 06CA0028, 2007-Ohio-1342, ¶ 37; State v. Ballard (Nov. 22, 1996), Montgomery App. No. 15410. Having examined the testimony of the four doctors at issue, we find no abuse of discretion in the trial court's ruling. The defense presented testimony from two retained experts, Dr. Vester and Dr. Miller. These witnesses both opined that Dr. Pavlina met the applicable standard of care in treating the decedent. They gave similar opinions regarding Dr. Pavlina's interaction with nurse Yerian, and they agreed that the decedent experienced a sudden, catastrophic bleed that began at 11:55 p.m. Unlike Dr. Vester, however, Dr. Miller based his opinion about the timing of the bleeding on his review of post-operative chest x-rays. The third defense witness, Dr. Merle, testified about bypass surgery generally and about the specific procedure he performed on the decedent. He declined to opine about when the decedent's bleeding began or what caused it, and he was asked very few questions about Dr. Pavlina meeting the applicable *Page 6 
standard of care. Finally, Dr. Pavlina testified in his own defense. He discussed his treatment of the decedent and explained why he acted as he did.
 {¶ 11} In our view, the trial court did not abuse its discretion in declining to find the probative value of the foregoing testimony to be substantially outweighed by danger of unfair prejudice or by concerns about needless presentation of cumulative evidence. In reaching this conclusion, we reject Cummins' argument that the trial court previously found Dr. Vester's trial testimony unnecessary when it overruled a defense motion for a continuance. The record reflects that the defense moved for a continuance on March 19, 2007, citing, inter alia, difficulty in scheduling Dr. Vester for trial testimony. The trial court overruled the motion on March 22, 2007 based on unspecified "discussions" with counsel. It does not follow that trial court abused its discretion in permitting Dr. Vester's testimony under Evid. R. 403 merely because it refused to continue the trial to accommodate that testimony. The first assignment of error is overruled.
 {¶ 12} In his second assignment of error, Cummins claims the trial court erred in prohibiting cross examination of defense expert witnesses regarding their commonality of malpractice insurance with Dr. Pavlina. This assignment of error concerns the Ohio Supreme Court's holding inEde v. Atrium South OB-GYN, Inc., 71 Ohio St.3d 124, 1994-Ohio-424, that "[i]n a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." Id. at syllabus; see also Davis v. Immediate Med. Serv., Inc., 80 Ohio St.3d 10, 16,1997-Ohio-363 ("In an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that *Page 7 
defendant."). Cummins contends the trial court violated Ede when it excluded cross examination of Dr. Vester about the fact that Dr. Vester and the defendant, Dr. Pavlina, both had malpractice insurance provided by Pro Assurance, Inc. Similarly, Cummins asserts that the trial court violated Ede by failing to allow full and complete cross examination of Dr. Miller regarding the fact that Dr. Miller and Dr. Pavlina both were insured by Pro Assurance.
 {¶ 13} In response, the appellees argue that Cummins' attorneydid cross examine Dr. Miller on the commonality of insurance issue. With regard to cross examination of Dr. Vester, the appellees criticize Cummins for not filing a motion in limine addressing Ede andDavis. They also contend there is no "discussion on the record" about the trial court's decision to sustain their objection to cross examination of Dr. Vester on the commonality of insurance issue. In addition, the appellees cite Dr. Vester's videotaped perpetuation deposition testimony wherein he noted that he was insured by Pro Assurance and stated that he had become aware just two weeks earlier of Dr. Pavlina being insured by the same company. The appellees reason that commonality of insurance between Dr. Vester and Dr. Pavlina cannot have biased Dr. Vester's opinions if he was unaware of the common insurance when he formed his opinions. The appellees also argue that the record does not affirmatively show the existence of common insurance because Dr. Pavlina never was asked to identify his insurance carrier. Finally, the appellees assert that the Ohio Supreme Court's rulings inEde and Davis should be limited to mutual insurance companies which are owned by their insureds.
 {¶ 14} Upon review, we agree with the appellees that Cummins' attorney did cross examine Dr. Miller, albeit briefly, regarding commonality of insurance with Dr. Pavlina. Prior to the cross examination, counsel addressed the issue with the trial court during a sidebar *Page 8 
discussion. Unfortunately, much of that discussion is recorded in the trial transcript as "indiscernible." (Tr. Transcript at 634-636). The relevant sidebar discussion, during which Cummins contends the trial court improperly limited the ability of his attorney, Kevin O'Connor, to cross examine Dr. Miller, is recorded in the trial transcript as follows:
 {¶ 15} MR. O'CONNOR: "The Court ruled yesterday that we may not discuss the similarity of (indiscernible — away from the microphone)."
 {¶ 16} UNIDENTIFIED: "(Indiscernible)."
 {¶ 17} MR. O'CONNOR: "And I'm not going to violate your order (indiscernible)."
 {¶ 18} THE COURT: "Well, the thing is (indiscernible). I suppose (indiscernible)."
 {¶ 19} MR. O'CONNOR: "I don't want you being upset with me."
 {¶ 20} THE COURT: "Well, you know what (ph) I'm talking about (indiscernible)."
 {¶ 21} MR. O'CONNOR: "I think it's sort of long, but I didn't want you —"
 {¶ 22} THE COURT: "I think if I understand the (indiscernible) decision submitted, it's fair game. (Indiscernible)."
 {¶ 23} MR. WELCH: "Well, I would object. I think — yeah. My point, my objection would be, and I think it pertains to Dr. Miller too, is that unless at the time they reviewed the case and rendered their opinions, unless they know that they — unless they have some knowledge that their carrier's the same as the Defendant, how can you possibly have any bias? And in that circumstance, the unfairness of it outweighs the probative value, even under the Ohio Supreme Court case. That's my position."
 {¶ 24} MR. BROOKSHIRE: "Your Honor, that is not the (indiscernible). There isn't a timing element (indiscernible)."
 {¶ 25} THE COURT: "(Indiscernible)." *Page 9 
 {¶ 26} MR. O'CONNOR: "(Indiscernible) I'll ask (indiscernible)."
 {¶ 27} THE COURT: "Yeah."
 {¶ 28} MR. O'CONNOR: "(Indiscernible). That's it."
 {¶ 29} THE COURT: "No, you're not going (indiscernible). Absolutely not. If you want to ask (indiscernible), I don't care but (indiscernible)."
 {¶ 30} MR. O'CONNOR: "Okay. That's fine."
 {¶ 31} THE COURT: "That's as far as you're going to go with it. And then we'll (indiscernible) instruct (indiscernible) cross examination (indiscernible) and that's as far (indiscernible) and keep it short."
 {¶ 32} MR. O'CONNOR: "Two questions. That's why I asked you beforehand."
 {¶ 33} THE COURT: "All right." (Tr. Transcript at 634-636).
 {¶ 34} Immediately after the sidebar, Cummins' counsel established that the law firm representing the appellees had represented Dr. Miller in another matter. Cummins' attorney then inquired whether Dr. Miller was "insured by the same liability insurance company as Dr. Pavlina[.]" Dr. Miller responded: "I don't know that for a fact. I assume that, yes * * *." (Id. at 636). Cummins' counsel asked nothing else about Dr. Miller's commonality of insurance with Dr. Pavlina. On appeal, Cummins contends the trial court erred during the sidebar by limiting his attorney to asking only two questions. Cummins asserts that the trial court should have permitted him to inquire further into the commonality-of-insurance issue to exploit any potential bias Dr. Miller might have had.
 {¶ 35} Given that much of the sidebar discussion is indiscernible, however, we cannot determine what else the trial court prohibited Cummins' counsel from asking. While we agree that Ede and Davis would permit additional cross examination — beyond establishing the mere *Page 10 
fact of common insurance — to explore possible biases that may result from the existence of common insurance, the sidebar record is of almost no use to us. We have no record of what, specifically, Cummins' counsel wanted to ask Dr. Miller. The record does make clear that the trial court imposed some limits on counsel's cross examination. But without knowing what those limits were, or why the trial court imposed them, we cannot say it abused its discertion in doing so. Accordingly, on the record before us, we find no violation of Ede and Davis with regard to Dr. Miller's cross examination because counsel was permitted to inquire about a commonality of insurance interests and the record does not reveal what else counsel was prohibited from asking.[3]
 {¶ 36} The attempted cross examination of Dr. Vester requires a more detailed analysis. The record reflects that a videotaped perpetuation deposition of Dr. Vester was taken on March 22, 2007. During the deposition, Dr. Vester identified his malpractice liability insurer as Pro Assurance. (Vester perpetuation depo. at 88). When asked whether he was aware of Dr. Pavlina also being insured by Pro Assurance, Dr. Vester responded: "I learned of that two weeks ago at the time of my previous deposition with you." (Id. at 88-89). Dr. Vester then stated that he did not believe he would receive any financial benefit from Pro Assurance if Dr. Pavlina were to prevail in the lawsuit. (Id. at 90). Over Cummins' counsel's objection, the trial court did not allow the jury to view the portion of the videotaped deposition wherein Dr. Vester was questioned about a commonality of insurance with Dr. Pavlina.[4] (Id. at 904). The *Page 11 
rationale for the trial court's ruling is not reflected in the record.
 {¶ 37} Upon review, we find that the trial court erred in not allowing the jury to see the cross examination of Dr. Vester regarding commonality of insurance with Dr. Pavlina. As set forth above, the Ohio Supreme Court held in Ede that "[i]n a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." Ede, supra, at syllabus. Likewise, in Davis, the court unequivocally stated: "In an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant." Davis, 80 Ohio St.3d at 16. We believe Ede andDavis are equally applicable in this case. In light of Dr. Vester's acknowledgment that he and Dr. Pavlina shared the same insurance carrier, Cummins' counsel should have been permitted to bring that fact to the jury's attention.
 {¶ 38} In reaching the foregoing conclusion, we are unpersuaded by the appellees' arguments to the contrary. Although the appellees criticize Cummins for not filing a motion in limine addressing Ede andDavis, they cite no authority requiring him to do so. Indeed, a motion in limine typically is filed by the party opposing the introduction of evidence, not its proponent. See, e.g., State v. French,72 Ohio St.3d 446, 449, 1995-Ohio-32 (quoting Black's Law Dictionary's definition of a motion in limine as "`[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury'"). We are equally unpersuaded by the appellees' observation that the *Page 12 
record lacks a "discussion" about the trial court's refusal to allow cross examination of Dr. Vester on the commonality of insurance issue. The appellees do not dispute that the trial court disallowed the cross examination and that Cummins objected to the ruling.
 {¶ 39} We are more sympathetic to the appellees' argument that Dr. Vester did not discover a commonality of insurance between himself and Dr. Pavlina until two weeks before his perpetuation deposition. The appellees logically reason that a commonality of insurance between Dr. Vester and Dr. Pavlina could not have biased Dr. Vester's medical opinions if he was unaware of the common insurance when he formed his opinions. Therefore, they argue that the trial court could not have committed prejudicial error in disallowing cross examination about the commonality of insurance between Dr. Vester and Dr. Pavlina.
 {¶ 40} Although the foregoing argument is reasonable, it is foreclosed by the Ohio Supreme Court's ruling in Davis. In that case, one of the physician defendants, Dr. Barbara Guarnieri, presented expert testimony from Dr. Bruce Janiak. Dr. Guarnieri and Dr. Janiak were not insured by the same company. But Dr. Janiak and another defendant in the case did share a common malpractice insurer. Relying on Ede, the Davis majority held that the trial court abused its discretion in not allowing cross examination on the issue of commonality of insurance. According to the majority, the jury should have been permitted to hear the testimony because it raised a potential issue of bias that was for the trier of fact to resolve. Davis, 80 Ohio St.3d at 15-17. The majority reached this conclusion despite a dissent stressing Dr. Janiak's voir dire testimony "that he was unaware that his premiums might be affected by this case since he testified that he was also unaware of otherdefendants being insured by his insurer." Id. at 25 (Lundberg Stratton, J., dissenting) (emphasis added). In light of Davis, we are compelled to reject the appellees' argument that a commonality of insurance *Page 13 
between Dr. Vester and Dr. Pavlina could not have biased Dr. Vester's medical opinions because he contends he was unaware of the common insurance when he formed his opinions. The Davis majority necessarily must have concluded that the credibility of such a contention is a jury question.
 {¶ 41} We also reject the appellees' argument that the record does not affirmatively demonstrate a commonality of malpractice insurance between Dr. Vester and Dr. Pavlina. Even if this assertion were true, it would not preclude cross examination of Dr. Vester on the issue. An attorney "need not lay an evidentiary foundation before posing questions upon cross-examination. It is sufficient if there is a good-faith basis to question the witness on the subject." In re H.M.S., Franklin App. No. 05AP-613, 2006-Ohio-701, ¶ 7. Moreover, good faith is presumed when it is not questioned. Id. Here the appellees do not dispute that Cummins' counsel had a good faith basis to inquire about a commonality of insurance between Dr. Vester and Dr. Pavlina. In fact, the appellees do not even dispute that the two doctors do share a common malpractice insurer. Instead, they contend only that Cummins failed toprove that fact at trial. Although such proof was unnecessary to justify cross examination, we note that Dr. Vester did admit knowing during his perpetuation deposition that he and Dr. Pavlina were insured by the same company.
 {¶ 42} Finally, we reject the appellees' argument that Ede andDavis should be limited to cases involving mutual insurance companies. It is true that Ede involved a defendant and expert witness insured by the Physicians' Mutual Insurance Company ("PIE"), but the holding in that case was not limited to mutual insurance companies. InEde, the court recognized the argument that "since PIE is a mutual insurance company, each insured's policy is evidence of some fractional part ownership in PIE." Ede, 71 Ohio St.3d 124. The court also recognized the *Page 14 
appellant's argument that "PIE-insured medical experts have a built-in bias — fewer successful malpractice claims means lower premiums charged for malpractice insurance." Id. Later in its opinion, the court again noted the argument that "as a fractional part-owner of PIE, [an insured's expert's] own premiums might fluctuate due to the result of the case." Id. at 127. This same argument would apply, however, whenever an expert witness and defendant share the same malpractice insurer — regardless of whether the insurance company is a mutual company. Indeed, it stands to reason that any insured's premiums might rise if his insurer experiences a greater number of successful malpractice claims.
 {¶ 43} Perhaps this is why the Ede court expressed its holding more expansively, stating generally that "evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." Id. at 128. Likewise, in Davis, the court broadly held that "an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant." Davis, 80 Ohio St.3d at 16. Absent from Davis is any reference to the insurer there, the Physician's Insurance Exchange Company, even being a mutual company. See also Johnston v. Univ.Mednet, 71 Ohio St.3d 608, 1995-Ohio-1 (summarily reversing the court of appeals' judgment on the basis of Ede even though the appellate court's opinion did not address whether the malpractice insurer was a mutual company); Fehrenbach v. O'Malley, 164 Ohio App.3d 80, 94-95,2005-Ohio-5554 (applying Ede and Davis without any indication that the insurance company at issue was a mutual company). Because we find nothing in the holding or rationale of Ede and Davis limiting those cases to mutual insurance companies, we reject the appellees' argument. *Page 15 
 {¶ 44} During oral argument, the appellees also cited Kremer v.Rowse, Montgomery App. No. 21311, 2006-Ohio-992, for the proposition that any error in disallowing cross examination on the issue of common insurance was non-prejudicial and harmless. In Kremer, which was not a commonality-of-insurance case, we found error in the trial court's refusal to allow cross examination of the defendant's medical expert, Dr. Kenneth Jenkins, about having been hired by the defendant's liability insurer, Allstate, and having worked for Allstate in other cases. In the course of our opinion, we cited Ede and Davis for the general proposition that an expert witness is subject to cross examination to establish bias. We then found, however, that the trial court's denial of cross examination in Kremer was harmless error. In reaching this conclusion, we reasoned:
 {¶ 45} "* * * Dr. Jenkins testified that he worked for all of the major insurance companies, not just Allstate. He denied that he had a pecuniary interest in providing favorable reports and stated that he received his fee from the insurance company regardless of his opinion in the case. He stated: `I have had more than my fair share of cases that have been sent to me that I've advised to pay. * * * So that's not really fair for you to even make or draw an assumption such as that.' Dr. Jenkins further indicated that he had an active chiropractic practice in addition to providing peer reviews. Upon review of the record, we find no reasonable possibility that the outcome of the trial would have been different had the cross-examination been viewed by the jury." Id. at ¶ 20.
 {¶ 46} Upon review, we are unpersuaded by the appellees' reliance onKremer. Notably, after issuing the Kremer opinion cited by the appellees, we granted a motion for reconsideration and vacated the portion of our opinion finding the denial of cross examination to be harmless error. See Kremer v. Rowse, Montgomery App. No. 21311,2006-Ohio-2336. *Page 16 
After further reflection, we found "a reasonable possibility that the verdict would have been different had the jury been informed of Dr. Jenkins's relationship with Allstate." Id. at ¶ 6. We reach the same conclusion here. "Where an expert has a financial incentive to be biased, the jury may determine whether the bias exists * * *."Davis, 80 Ohio St.3d at 18. Given that commonality of insurance can provide a financial incentive for bias, the jury reasonably may have found bias if the excluded cross examination had been allowed. Moreover, there is a reasonable possibility that the jury may have credited the testimony of Cummins' medical expert upon finding bias in the expert testimony presented by the appellees.
 {¶ 47} Based on the reasoning set forth above, we sustain Cummins' second assignment of error insofar as he contends the trial court erred in disallowing cross examination of Dr. Vester regarding commonality of insurance with Dr. Pavlina.
 {¶ 48} In his third assignment of error, Cummins asserts that the trial court erred in partially excluding cross examination of Dr. Vester and in limiting cross examination of Dr. Miller regarding financial incentives to testify for the appellees. This assignment of error raises issues similar to those addressed under Cummins' second assignment of error. In addition to using a commonality of insurance to show potential bias, however, Cummins contends the trial court should have allowed cross examination on other issues potentially affecting the witnesses' credibility.
 {¶ 49} With regard to Dr. Miller, we find Cummins' argument to be unpersuasive. As discussed above, the trial court allowed Cummins' attorney to cross examine Dr. Miller regarding commonality of insurance with Dr. Pavlina. The trial court also allowed counsel to cross examine Dr. Miller about his prior attorney-client relationship with the law firm representing Dr. Pavlina. As noted above, a sidebar conference preceded this portion of the *Page 17 
cross examination. Key portions of the discussion that occurred are identified as "indiscernible" in the transcript. (Tr. Transcript at 634-636). As a result, we once again cannot determine what else, if anything, Cummins' attorney wanted to ask or what the trial court may have prohibited him from asking. Absent our ability to make such a determination, we have no basis to find that the trial court abused its discretion in limiting the cross examination of Dr. Miller.
 {¶ 50} We reach a different conclusion regarding the trial court's exclusion of some of the videotaped perpetuation deposition of Dr. Vester. In the excluded portion of the cross examination challenged on appeal, Cummins' counsel sought to inquire about Pro Assurance, which insured both Dr. Vester and Dr. Pavlina, also paying Dr. Vester's expert witness fees in the case. (Vester perpetuation depo. at 88-90). The trial court abused its discretion in excluding this testimony because it plainly was probative of potential bias and should have been considered by the jury.
 {¶ 51} Cummins next challenges the trial court's exclusion of Dr. Vester's response to a question about whether he would receive any financial benefit from Pro Assurance if Dr. Pavlina prevailed in the case. Dr. Vester responded to the question as follows: "That, that's pretty wild. No. I mean we in Cincinnati, cardiothoracic surgeons in Cincinnati are very accustomed to paying the bills for other people. And the medical/legal environment in the City of Cincinnati is far more, far less litigious than it is in Cleveland. So we have been used to writing checks for Cleveland and other areas north of here for a long time. So I don't believe that I am going to have any noticeable benefit whatsoever." (Id. at 90).
 {¶ 52} Cummins contends Dr. Vester's response was admissible because it reflects his bias against medical-malpractice plaintiffs. In our view, however, the trial court did not abuse *Page 18 
its discretion in excluding the statement. Dr. Vester's views about the relative litigiousness in Cincinnati, Cleveland, and "other areas north" was not particularly relevant and reasonably could have been excluded under Evid. R. 403 even if his comments might have reflected a general bias against medical-malpractice plaintiffs.
 {¶ 53} Finally, Cummins challenges the trial court's exclusion of cross examination concerning the amount of fees Dr. Vester charged for his work in the case. (Id. at 91). We note, however, that the trial court permitted the jury to hear essentially the same cross examination about fees earlier in the videotaped perpetuation deposition. (Id. at 83-84; Tr. Transcript at 518-519). Therefore, the trial court's exclusion of the subsequent cross examination about the same fees did not constitute an abuse of discretion.
 {¶ 54} For the reasons set forth above, Cummins' third assignment of error is sustained insofar as he challenges the trial court's exclusion of cross examination about Pro Assurance paying Dr. Vester's expert witness fees. The third assignment of error is overruled in all other respects.
 {¶ 55} In his fourth assignment of error, Cummins argues that the trial court erred in limiting cross examination of Dr. Pavlina concerning his preoccupation with another patient while caring for the decedent. This argument concerns Cummins' belief that Dr. Pavlina did not really listen to nurse Yerian in the ICU when she updated him about the decedent's vital signs and condition. Cummins asserts that Dr. Pavlina did not pay enough attention to Yerian because he was preoccupied with thoughts about an elderly patient on whom he recently had performed bypass surgery.
 {¶ 56} At trial, Cummins' attorney cross examined Dr. Pavlina about other surgical procedures he performed on the day in question. Counsel established that Dr. Pavlina had *Page 19 
experienced a very stressful day, that he had performed two surgeries, and that he was concerned about a patient in his eighties whose health was failing. The trial court initially overruled objections to cross examination about this elderly patient. After permitting pages of questioning about the patient and Dr. Pavlina's concerns, the trial court ultimately sustained an objection on the basis of relevance, refusing to allow "further testimony about another patient." (See Tr. Transcript at 759-764).
 {¶ 57} Upon review, we find that the trial court gave Cummins' counsel a sufficient opportunity to make his point about Dr. Pavlina being stressed out and preoccupied when he spoke to nurse Yerian. When counsel failed to make this point clearly, the trial court gave him an additional chance to relate the cross examination to the issues in the case. Only after allowing additional questioning did the trial court finally sustain an objection. It is well settled that limiting "`cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion.'" State v. Treesh, 90 Ohio St.3d 460, 480,2001-Ohio-4, quoting State v. Acre (1983), 6 Ohio St.3d 140, 145. We find no abuse of discretion here. The fourth assignment of error is overruled.
 {¶ 58} In his fifth assignment of error, Cummins contends the trial court erred in refusing to give a proposed jury instruction regarding commonality of insurance between Dr. Pavlina and his expert witnesses.
 {¶ 59} The jury instruction requested by Cummins stated that the jury could consider the commonality of insurance between Dr. Pavlina and his expert witnesses for purposes of assessing the credibility of those experts and determining whether they may be biased in favor of Dr. Pavlina. Cummins argues that the instruction should have been given because it *Page 20 
was a correct statement of the law, it was applicable to the facts of the case, and reasonable minds might reach the conclusion sought by the instruction.
 {¶ 60} "A trial court's failure to give a proposed jury instruction is reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction." Walker v.Conrad, Montgomery App. No. 19704, 2004-Ohio-259, ¶ 20, citingJaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320,327. "The trial court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles.'" Id. at ¶ 21, quoting Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690-691.
 {¶ 61} Upon review, we find that Cummins' proposed instruction was unnecessary because the trial court gave an adequate standard instruction regarding credibility and bias. Although the trial court did not specifically highlight the fact that commonality of insurance may support a finding of bias, we are unpersuaded that a trial court must specifically instruct on individual potential sources of bias. Here the trial court instructed the jury to assess witness credibility by considering, inter alia, "interest, and bias, if any, together with all of the facts and circumstances surrounding the testimony." In light of this standard instruction on credibility and bias, we cannot say that the trial court abused its discretion by refusing to give the instruction requested by Cummins.[5] The fifth assignment of error is overruled. *Page 21 
 {¶ 62} In his sixth assignment of error, Cummins raises a claim of "cumulative error." He asserts that the errors alleged in his first five assignments of error, viewed collectively, deprived him of a fair trial. We disagree. The cumulative-error doctrine traditionally has not been applied in the civil context. See, e.g., Frost v. Snitzer, Trumbull App. No. 2005-T-0090, 2006-Ohio-3882, ¶ 107; Brewer v. Sky Climber, Inc.
(June 14, 1984), Montgomery App. No. 8071. Moreover, the doctrine requires the presence of individually harmless errors that, when viewed together, violate a person's right to a fair trial. State v.Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448. The error we have found in our analysis of Cummins' second assignment of error, supra, individually is prejudicial enough to require reversal and remand for a new trial. Therefore, we have no need to engage in a cumulative-error analysis. The sixth assignment of error is overruled.
 {¶ 63} Having sustained portions of Cummins' second and third assignments of error, however, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.
 Judgment reversed and cause remanded. *Page 22 
FAIN, J., and GRADY, J., concur.
Copies mailed to:
James D. Brookshire John B. Welch Karen L. Clouse Kevin P. OConnor, Pro Hac Vice Hon. Barbara P. Gorman
[1] Claims against several other defendants were dismissed prior to trial. Additionally, the trial court granted a directed verdict in favor of the appellees on a survivorship claim.
[2] On appeal, Cummins represents that the trial court addressed his concerns during a pretrial conference.
[3] In any event, given that we are reversing the trial court's judgment for other reasons discussed infra, Cummins' counsel will have the opportunity to conduct a more thorough cross examination on the commonality-of-insurance issue if Dr. Miller testifies in a subsequent retrial.
[4] Over Cummins' counsel's objection, the trial court also excluded cross examination of Dr. Vester regarding other possible sources of bias. These issues are addressed in Cummins' third assignment of error.
[5] Parenthetically, we reject the appellees' alternative argument that Cummins failed to preserve the jury instruction issue for appellate review. The appellees cite Civ. R. 51(A), which provides that "a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict * * *." In the present case, Cummins filed a motion to include the jury instruction discussed above. The record does not reflect that he formally objected, however, when the trial court declined to give the instruction. Nevertheless, "[w]here the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, that party does not waive his objection to the court's charge by failing to make a formal objection to the charge as actually given by the trial court." Krischbaum v.Dillon (1991), 58 Ohio St.3d 58, 61, citing Presley v. Norwood (1973),36 Ohio St.2d 29, paragraph one of the syllabus. "The purpose of Civ. R. 51(A) is to provide a trial court with an opportunity to correct any errors in the instructions as given, and that purpose is fully served where the appellant has formally requested an instruction to the contrary, and the issue has been argued to the trial court." Id.