[Cite as *State v. Robbins*, 2013-Ohio-612.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120107 |
| | | TRIAL NO. B-1003748 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DAVID ROBBINS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  February 22, 2013

*Joseph T. Deters*, Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal from a judgment of conviction and sentence in a criminal case.  David Robbins challenges his convictions based upon the admission of statements he made to police officers after his arrest, which he contends were involuntary and should have been suppressed, the admission of "other acts" evidence, insufficiency of the evidence and ineffective assistance of counsel.  He challenges his sentences on the grounds that the trial court erroneously imposed postrelease control and imposed consecutive sentences without making the statutorily mandated findings.  For the reasons that follow, we affirm the convictions but vacate the sentences in part and remand the cause for resentencing.

{¶2}    Mr. Robbins was indicted for aggravated murder, murder, and four counts of felonious assault.  He repeatedly stabbed Yolanda Smith, causing her death, and cut Doris Robbins when she came to Ms. Smith's defense.  Ms. Robbins is the spouse of the defendant and the mother of Ms. Smith.  According to evidence adduced at trial, Mr. Robbins had been married to Ms. Robbins for the past 21 years, but also had been engaging in sexual relations with Ms. Smith for the past eight years

{¶3}    Mr. Robbins filed a motion to suppress statements that he had made to police when he was questioned three days after the stabbing.  Following a hearing, the trial court denied Mr. Robbins's motion.  A bench trial followed.

{¶4}    Norwood police officer Matt Evans testified at trial that he had responded to Millcrest Park on June 4, 2010.  When he arrived at the park, he was met by Ms. Robbins who told Officer Evans that her daughter had been stabbed.  Ms. Smith was barely breathing and had no noticeable pulse.  According to Officer Evans, Ms. Robbins identified the person who had stabbed Ms. Smith as "Dave."

{¶5}     Ms. Robbins testified that at the suggestion of the defendant, she and Ms. Smith agreed to meet at the park so that Ms. Smith could give Ms. Robbins advice about Ms. Robbins's relationship with the defendant.  When Ms. Robbins asked Ms. Smith whether she thought the Robbinses could work out their marital problems, Ms. Smith answered, "Hell no, momma."  At that point, Mr. Robbins walked behind Ms. Smith, hit her in the back, and then grabbed her by the collar and began to stab her.  The two fell to the ground wrestling.  Ms. Robbins intervened and tried to pull Mr. Robbins off of Ms. Smith, and in the process was cut by the knife.  Mr. Robbins jumped up and fled.  Ms. Robbins further testified that she had not learned that Mr. Robbins and Ms. Smith had had a sexual relationship and that Mr. Robbins was the father of Ms. Smith's twin boys until after he had been charged in this matter.

{¶6}     Detective Kurt Ballman testified about his interview with Mr. Robbins after he had been taken into custody.   Detective Ballman related that after he had informed Mr. Robbins of his *Miranda* rights, Mr. Robbins gave multiple accounts about what had happened at the park.  Mr. Robbins first claimed that he only remembered falling down with Ms. Smith and that he had then blacked out.  Later, Mr. Robbins stated that he had stabbed Ms. Smith only after she had stabbed him. He indicated a cut on his left hand that he said had been caused by Ms. Smith. When Detective Ballman told Mr. Robbins that this story did not sound truthful, Mr. Robbins stated that he had been upset because Ms. Smith had recently ended their eight-year affair.  At the park, he heard Ms. Smith tell her mother that he had raped her.   Angered by the accusation, he grabbed a knife and stabbed Ms. Smith.  Mr. Robbins said he could remember stabbing Ms. Smith only once.

{¶7}     Denise Wallace testified on behalf of Mr. Robbins. According to Ms. Wallace, Robbins had shown up at her house on June 4 with blood on his head and a cut on his finger. Mr. Robbins told her that Ms. Smith had pulled a knife on him and that he had blacked out.

{¶8}     Mr. Robbins took the stand in his own defense. He stated that he had begun a sexual relationship with Ms. Smith in an attempt to get her pregnant so that she could leave the Army. By his account, he told Ms. Robbins about the relationship during the week prior to June 4, and it was Ms. Smith who had suggested meeting in the park. Mr. Robbins testified that he did not remember much of what had happened at the park. He only remembered that Ms. Smith had grabbed him by his shirt and that he had run to his truck and driven away.

{¶9}     At the conclusion of the trial, the court found Mr. Robbins guilty of murder, two counts of felonious assault against Ms. Smith, and one count of felonious assault against Ms. Robbins. He was acquitted of aggravated murder and one count of felonious assault. The felonious assault counts involving Ms. Smith were merged into the murder count, and the trial court imposed 15 years to life for murder and eight years for felonious assault. The sentences were made consecutive.

{¶10}     In his first assignment of error, Mr. Robbins asserts that the trial court erred when it denied his motion to suppress the statements he had made following his arrest. Mr. Robbins acknowledged that Detective Ballman had read him his *Miranda* rights. But he contends that the waiver of his right to remain silent and his subsequent statements were not voluntarily made because he had not taken his diabetes medicine, had eaten little food, and had been sleep-deprived.

{¶11}     We review the voluntariness of Mr. Robbins's waiver and statements under a totality-of-the-circumstances test. *State v. Eley*, 77 Ohio St.3d 174, 178, 672

N.E.2d 640 (1996). That Mr. Robbins signed a written waiver form is strong proof of the validity of the waiver. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). And Mr. Robbins testified at the suppression hearing that he had voluntarily waived his *Miranda* rights. The police provided him with his asthma medication and with a bag of potato chips, but were unable to locate his diabetes medication. Despite his claims that he was suffering from the effects of diabetes and sleep deprivation, the recording of the police interview demonstrates that Mr. Robbins was lucid, coherent, and had no difficulty communicating with Detective Ballman. Having reviewed the record, we conclude that the trial court's finding that Mr. Robbins voluntarily waived his right to remain silent was supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The first assignment of error is overruled.

{¶12} In his second assignment of error, Mr. Robbins argues the trial court abused its discretion when it admitted evidence of his other bad acts. Over Mr. Robbins's objection, the court permitted Ms. Robbins to testify that Mr. Robbins had beaten her in the past.[1]

{¶13} Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." "Other acts" evidence may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Evid.R. 404(B). The state argues that Ms. Robbins's testimony was admissible to explain the relationship between Ms.

---

[1] In his assignment of error, Mr. Robbins also asserts that the admission of the testimony was plain error, but because he objected at the time of the testimony, he preserved the error for our review. We are not limited to plain-error review. *See* Crim.R. 52(B).

Robbins, Ms. Smith, and Mr. Robbins, and the immediate background of the crime. The defendant contends that any probative value of such evidence is "substantially outweighed by the danger of unfair prejudice" and therefore it should have been excluded pursuant to Evid.R. 403(A).

{¶14}   Even if we were to assume that the evidence should not have been admitted, any error was harmless.   The case was tried to the bench.   Thus, we presume that "the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968).   Further, admission of Ms. Robbins's testimony was harmless in light of the other overwhelming evidence of Mr. Robbins's guilt.   The second assignment of error is overruled.

{¶15}   In his third assignment of error, Mr. Robbins asserts that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶16}   When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offenses. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.  *Id.* at 387.

{¶17}   We conclude that the state presented sufficient evidence of murder and felonious assault.   And having reviewed the record, we are unable to conclude that the trial court lost its way in finding Mr. Robbins guilty of the offenses.   The court was in the best position to determine the credibility of the witnesses.   The third assignment of error is overruled.

{¶18}  Mr. Robbins's fourth assignment of error raises two separate errors for our review.  First, he contends that the trial court erred when it refused to acquit him because he acted in self-defense.  In one of his statements to Detective Ballman and during his testimony, Mr. Robbins stated that Ms. Smith had attacked him first with a knife.  This version of events, however, was contradicted by Ms. Robbins's testimony.   Further, Dr. Karen Looman corroborated Ms. Robbins's account when she testified that Ms. Smith had been stabbed in the chest and back, and had suffered defensive wounds to her hands.  Given this testimony and the overwhelming evidence of Mr. Robbins's guilt, the court did not err in failing to acquit on the basis of self-defense.

{¶19}  Within this assignment of error, Mr. Robbins also suggests that his attorney was ineffective for failing to argue self-defense.  To prevail on this argument, Mr. Robbins must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the proceedings would have been different. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Counsel's decision not to argue self-defense was a reasonable, tactical one that we will not second-guess on appeal.  And even if counsel had argued self-defense, we are not convinced the result of the trial would have been different.  The fourth assignment of error is overruled.

{¶20}  Mr. Robbins's fifth assignment of error is that the trial court erred when it imposed postrelease control as part of a murder sentence and failed to address court costs.

{¶21}  Mr. Robbins correctly contends that postrelease control does not apply to sentences for murder.  But in this case, Mr. Robbins also was sentenced for

felonious assault, a felony of the second degree, for which postrelease control is mandatory. We note, however, that the trial court notified Mr. Robbins that he was subject to five years of postrelease control. For a second-degree felony, only three years of postrelease control is required. R.C. 2967.28(B)(2). We conclude therefore that the trial court erred in notifying Mr. Robbins of the incorrect length of postrelease control.

{¶22} The trial court also failed to address the issue of court costs when sentencing Mr. Robbins. R.C. 2947.23(A) mandates that a trial court include in the sentence the costs of prosecution. The trial court erred when it failed to address costs and to make the appropriate order in its judgment entry. *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506 (1st Dist.). The fifth assignment of error is sustained.

{¶23} In his sixth assignment of error, Mr. Robbins asserts that the trial court erred in imposing excessive and consecutive sentences without having made statutorily mandated findings.

{¶24} Our review of Mr. Robbins's sentence has two steps. First, we must determine whether the sentence was "clearly and convincingly contrary to law." *State v. Valdez*, 1st Dist. No. C-110646, 2012-Ohio-5754, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14. Second, if it was not contrary to law, we review the sentence under an abuse-of-discretion standard. *Id.; see* R.C. 2953.08(G)(2).

{¶25} Before imposing consecutive sentences, the trial court must find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the

public." R.C. 2929.14(C)(4). Then, the court must make at least one of the findings listed in R.C. 2929(C)(4)(a)-(c).

{¶26} Here, the trial court did not make any findings before imposing consecutive sentences. Therefore, we sustain the sixth assignment of error and vacate the sentences to the extent that they were made consecutive.

{¶27} The cause is remanded for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C), and if so, to make the proper findings on the record, for a consideration of court costs, and for the imposition of the proper term of postrelease control. In all other respects, the trial court's judgment is affirmed.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**HENDON, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:

The court has recorded its own entry this date.