[Cite as *Schultz v. Mayfield Neurological Inst.*, 2013-Ohio-4146.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| JAMES W. SCHULTZ | : | APPEAL NO. C-120764 |
|  |  | TRIAL NO. A-0510837 |
| and | : |  |
| JULIE ANN SCHULTZ, | : |  |
| Plaintiffs-Appellants, | : | *O P I N I O N.* |
| vs. | : |  |
| MAYFIELD NEUROLOGICAL INSTITUTE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| MAYFIELD SPINE INSTITUTE, | : |  |
| Defendants-Appellees. | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 25, 2013

*John H. Metz*, for Plaintiffs-Appellants,

*The Triona Firm*, *James P. Triona* and *Paul Vollman*, for Defendants-Appellees.

**SYLVIA SIEVE HENDON, Presiding Judge.**

{¶1} James W. Schultz and his wife Julie Ann Schultz appeal the trial court's judgment in favor of Mayfield Neurological Institute and Mayfield Spine Institute (hereinafter collectively referred to as "Mayfield") in their action for medical malpractice and lack of informed consent. We affirm the trial court's judgment.

## *Background*

{¶2} In 1998, the Schultzes initiated an action against Mayfield and one of its practitioners, Stewart Dunsker, M.D. They alleged that as a result of a 1997 cervical-spine surgery performed by Dr. Dunsker, Mr. Schultz had suffered injury to his recurrent laryngeal nerve which permanently affected his ability to speak in a normal tone of voice.

{¶3} The Schultzes later voluntarily dismissed and refiled the action two more times. The most recent complaint was filed in 2005.

{¶4} In 2007, Dr. Dunsker asserted that he was entitled to immunity as a state employee, so the matter was stayed pending a determination by the Court of Claims.

{¶5} In 2009, the Court of Claims determined that Dr. Dunsker was entitled to immunity, pursuant to R.C. 9.86 and 2743.02(F), because he was a state employee acting within the scope of his employment with the University of Cincinnati when the alleged negligence occurred.

{¶6} In 2011, the Schultzes asked the trial court to find that Dr. Dunsker had waived the immunity defense. The trial court denied the motion.

{¶7} In 2011, the trial judge denied the Schultzes' motion for recusal. The Schultzes then filed with the Ohio Supreme Court an affidavit of bias and prejudice under R.C. 2701.03 to disqualify the trial judge. The affidavit of disqualification was denied.

{¶8} Following a bench trial, the court entered judgment in favor of Mayfield. The Schultzes now appeal, raising eleven assignments of error. None of their assignments of error challenged the weight or sufficiency of the evidence supporting the judgment.

### *Motion for a Mistrial*

{¶9} In their first assignment of error, the Schultzes argue that the trial court erred by denying their motion for a mistrial. They contend that the court improperly considered "evidence outside of the record and [made] determinations before all the evidence [was] presented."

{¶10} Generally, a motion for a mistrial in a civil case is treated as a motion for a new trial pursuant to Civ.R. 59(A). *See Gugliotta v. Morano*, 161 Ohio App.3d 152, 2005-Ohio-2570, 829 N.E.2d 757, ¶ 10 (9th Dist.). The rule allows a trial court to grant a new trial if an irregularity in the trial proceedings can be shown to have prevented the moving party from having a fair trial. Civ.R. 59(A)(1). We review a trial court's decision to grant or deny a motion for a mistrial or a new trial for an abuse of discretion. *See Savage v. Correlated Health Servs. Ltd.*, 64 Ohio St.3d 42, 591 N.E.2d 1216 (1992); *Jacobs v. McAllister*, 6th Dist. Lucas No. L-06-1172, 2007-Ohio-2032, ¶ 19.

{¶11} In moving for a mistrial, the Schultzes' attorney argued that he was concerned by off-the-record remarks made by the trial court. Because any such remarks are not part of the record, we have no basis to conclude that the trial court abused its discretion in refusing to grant a mistrial. Consequently, we overrule the first assignment of error.

### *Commonality of Insurance*

{¶12} In their second assignment of error, the Schultzes argue that the trial court erred by precluding them from cross-examining defense expert, Patrick McCormick, M.D., about his professional liability carrier.

**{¶13}** In an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant. *Ede v. Atrium South OB-GYN, Inc.*, 71 Ohio St.3d 124, 642 N.E.2d 365 (1994); *Davis v. Immediate Med. Servs.*, 80 Ohio St.3d 10, 16, 684 N.E.2d 292 (1997); *Fehrenbach v. O'Malley*, 164 Ohio App.3d 80, 2005-Ohio-5554, 841 N.E.2d 350, ¶ 37 (1st Dist.). We review the trial court's ruling pursuant to an abuse-of-discretion standard. *Calderon v. Sharkey*, 70 Ohio St.2d 218, 436 N.E.2d 1008 (1982), syllabus.

**{¶14}** In *Ede*, the Ohio Supreme Court held that the trial court had erred by finding that the potential for prejudice outweighed the probative value of testimony that a defense expert and a defendant physician were insured by the same carrier. *Ede* at 127. The Supreme Court cited two reasons supporting its conclusion: (1) the trial court had failed to consider the potential for the expert's personal bias resulting from the expert's having the same insurance carrier as the party for whom he testified; and (2) the trial court had grossly overestimated the effect of testimony that the defendant was insured would have on the jury. The Supreme Court stated:

> [T]estimony regarding insurance is not always prejudicial. However, too often courts have a Pavlovian response to insurance testimony -- immediately assuming prejudice. It is naive to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. Our Rules of Evidence are designed with truth and fairness in mind; they do not require that courts should be blind to reality.

*Id.*

4

{¶15}   In this case, Dr. McCormick, an expert witness for the defense, was cross-examined about his fees for case reviews and for testimony as an expert, the number of malpractice cases he had reviewed or testified in as an expert, the number of times he had testified for the defense in a malpractice case, and the number of times he had worked with trial counsel for Mayfield.  He was also cross-examined with respect to his having written an article about the escalation of costs of malpractice policies in Ohio and the fact that fewer insurers were willing to offer them.  He was further cross-examined about his participation in medical organizations that promoted tort-reform legislation.  However, when counsel for the Schultzes asked Dr. McCormick the identity of his medical liability insurance carrier, the trial court sustained a defense objection to the question.

{¶16}   Following Dr. McCormick's testimony, counsel and the court had a discussion on the question of the commonality of insurance with respect to Mayfield and Dr. McCormick.  Defense counsel indicated that Mayfield's insurance carrier for the case had been out of business for at least five years and that it had been liquidated.  So, he argued, Dr. McCormick could not have been insured "by a company that is out of business."  Counsel for the Schultzes, however, maintained that he should have been able to question the doctor on the subject.

{¶17}   On appeal, the Schultzes argue that the court's refusal to allow cross-examination on the question of the commonality of insurance was plain error requiring reversal.  Mayfield counters that in 2008, it had filed in this case a motion for stay on the grounds that its liability carrier had entered bankruptcy.  So, Mayfield argues, there existed no reasonable likelihood that Dr. McCormick had the same insurance carrier as Mayfield, or that he would have been motivated by any common pecuniary interest in the viability of a bankrupt insurance carrier.

{¶18}  On the facts of this case, even if the trial court erred by excluding the testimony, we cannot say that the Schultzes' substantial rights were prejudiced as a result.  The concerns expressed by the *Ede* court with respect to jury determinations were not

present here — this was a bench trial where both parties had ample opportunity to argue their positions on the commonality-of-insurance matter directly to the trier of fact. So the Schultzes cannot demonstrate that the outcome of the trial would have been otherwise had the testimony not been excluded. Accordingly, we overrule the second assignment of error.

### Notice of a Subpoena

{¶19} In their third assignment of error, the Schultzes argue that the trial court erred by allowing the defense to use subpoenaed materials in cross-examining their expert, because the defense had failed to serve a copy of the subpoena on the Schultzes.

{¶20} Civ.R. 45(A)(3) provides:

A party on whose behalf a subpoena is issued under division (A)(1)(b)(ii), (iii), (iv), (v), or (vi) of this rule shall serve prompt written notice, including a copy of the subpoena, on all other parties as provided in Civ.R. 5. If the issuing attorney modifies a subpoena issued under division (A)(1)(b)(ii), (iii), (iv), (v), or (vi) of this rule in any way, the issuing attorney shall give prompt written notice of the modification, including a copy of the subpoena as modified, to all parties.

{¶21} The Staff Notes accompanying the 2005 amendment to the rule state:

The notice requirement of amended Civ.R. 45(A)(3), like its counterpart in Rule 45(B)(1), Federal Rules of Civil Procedure, is intended 'to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.' Advisory Committee's Note to 1991 Amendments to the Federal Rules of Civil Procedure; see, e.g., *Spencer v. Steinman*, 179 F.R.D. 484, 488 (E.D.Pa. 1998).

No penalty is prescribed for a party's violation of the notice requirement.

{¶22} In May 2007, Mayfield issued a subpoena to the American Association of Neurological Surgeons ("AANS") requesting all documents related to the association's proceedings with regard to the Schultzes' expert witness, Donald Castle Austin, M.D. A copy of the subpoena was filed with the court but was not served upon the Schultzes.

{¶23} In July 2012, counsel for Mayfield used the subpoenaed materials during the cross-examination of Dr. Austin in his deposition, over the Schultzes' objection. Defense counsel questioned Dr. Austin about his having been sanctioned by the AANS in 1995 as a result of his testimony in a lawsuit against another neurosurgeon. Dr. Austin acknowledged that, following the disciplinary action, he had filed suit against the AANS in federal court.

{¶24} The trial in this case began in August 2012. After Dr. Austin's deposition was introduced and reviewed at trial, the Schultzes reiterated their objection to the use of the AANS materials on the basis that they had not been notified of the May 2007 subpoena from Mayfield to AANS. The trial court overruled their objection.

{¶25} On appeal, the Schultzes argue that they were unfairly surprised by Mayfield's use of the AANS materials during the cross-examination of Dr. Austin. They contend that Mayfield's failure to notify them of the 2007 AANS subpoena had deprived them of the opportunity to rehabilitate the witness.

{¶26} However, the Schultzes' argument that they were unfairly surprised by the subpoenaed materials rings hollow for two reasons. They had retained Dr. Austin in this case ten years before his deposition took place, so they had ample opportunity to learn of the AANS information before his July 2012 deposition. More importantly, though, the trial court stated that it would not consider the AANS proceedings or the resulting federal litigation for any purpose.

{¶27} Because the Schultzes failed to demonstrate that they were unfairly surprised by Mayfield's failure to notify them of the AANS subpoena, we hold that the trial court did not err by allowing Dr. Austin to be cross-examined with respect to the materials. We overrule the third assignment of error.

7

### *Hearsay*

{¶28} In their fourth assignment of error, the Schultzes argue that the trial court erred "by considering hearsay, namely ethical consideration [sic] by the [AANS]." They contend that they were prejudiced by the court's consideration of factual determinations by the AANS.

{¶29} As we have noted, the trial court indicated that it would *not* consider the AANS proceedings or the resulting federal litigation. Moreover, we are guided by the presumption that, in a bench trial, the court is presumed to have considered only the "relevant, material, and competent evidence." *See State ex rel. BDFM Co. v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 11AP-1094, 2013-Ohio-107, ¶ 45; *State v. Robbins*, 1st Dist. Hamilton No. C-120107, 2013-Ohio-612, ¶ 14.

{¶30} Because the record does not demonstrate that the trial court improperly considered any evidence of proceedings by the AANS with respect to Dr. Austin, we overrule the fourth assignment of error.

### *Immunity of Dr. Dunsker*

{¶31} In their fifth assignment of error, the Schultzes argue that the trial court erred by failing to determine whether Dr. Dunsker had waived his defense of immunity. However, the immunity issue is irrelevant given the uncontested finding of no liability. We overrule the fifth assignment of error.

### *Professional Literature*

{¶32} In their sixth assignment of error, the Schultzes argue that the trial court erred by permitting Mayfield's expert witnesses to cite medical literature without providing a specific citation or source, thereby preventing effective cross-examination.

8

**{¶33}** In *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, the Ohio Supreme Court held that expert witnesses are allowed to testify that their opinions are based, in part, on their review of professional literature. In this case, the trial court properly allowed the defense experts to make general references to the professional literature in support of their opinions. Neither expert impermissibly acted "as a conduit for the out-of-court statements of others," and both were subject to cross-examination to test their opinions. *See id.* at ¶ 33. Moreover, we presume that the court, as the trier of fact, considered only competent evidence. We overrule the sixth assignment of error.

### *Nickell v. Gonzalez*

**{¶34}** In their seventh assignment of error, the Schultzes argue that the trial court erred by "applying the *Nickell v. Gonzalez* 'reasonable person' and 'material' risk standards and allowing expert testimony on the ultimate issue." They contend that the reasonable person test "turns the doctrine [of informed consent] upon its head and renders it meaningless."

**{¶35}** In *Nickell*, the Ohio Supreme Court held that the tort of lack of informed consent is established when:

(a) the physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.

9

17 Ohio St.3d 136, 477 N.E.2d 1145 (1985).

**{¶36}** In *White v. Leimbach*, the Ohio Supreme Court held that expert medical testimony is required to establish the first and second elements set forth in *Nickell.* 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033 (2011), syllabus. In other words, expert testimony is required to: (a) establish the material risks and dangers inherently and potentially involved with a medical procedure; and (b) establish that an undisclosed risk actually materialized and caused injury to the patient. *Id.* at ¶ 34-38. However, expert medical testimony is not required to establish whether a reasonable person in the plaintiff's position would have decided against the procedure had the material risks been disclosed. *Id.* at ¶ 40. What a reasonable patient would have done in light of the disclosed risks is determined by the trier of fact. *Id.* at ¶ 37 and 41.

**{¶37}** In this case, the trial court properly applied the law as set forth in *Nickell* and *White.* With respect to the first *Nickell* element, the court concluded that the expert testimony of Drs. Dunsker and McCormick, who opined that injury to the larnyngeal nerve was not a significant or material risk, was more credible than that of the Schultzes' expert. With respect to the third *Nickell* element, the court, as the trier of fact, found it "inconceivable that a reasonable person in plaintiff's condition" would have decided against the anterior cervical discectomy surgery if the specific injury to the vocal cord had been disclosed.

**{¶38}** Because the trial court properly applied the law with respect to the Schultzes' claim of lack of informed consent, we overrule the seventh assignment of error.

### *Untimely Jury Demand*

**{¶39}** In their eighth assignment of error, the Schultzes argue that the trial court erred by denying their request to have their case heard by a jury.

**{¶40}** On May 18, 2006, the Schultzes filed a jury demand pursuant to Civ.R. 38 and 39. Upon the defendants' motion, the trial court struck the jury demand as being untimely.

**{¶41}** A jury demand may be filed "not later than fourteen days after the service of the last pleading directed to such issue." Civ.R. 38(B). The failure of a party to timely serve a demand for a jury trial constitutes a waiver of a trial by jury. Civ.R. 38(D).

**{¶42}** In this case, the trial court found that the Schultzes' jury demand had been filed four months late and that they had failed to respond to Mayfield's motion to strike the untimely demand. Consequently, we hold that the trial court did not abuse its discretion by striking the Schultzes' jury demand. We overrule the eighth assignment of error.

### Fairness of the Trial

**{¶43}** In their ninth assignment of error, the Schultzes argue that the trial court erred by failing to provide a fair and impartial trial. They contend that the trial court had a "negative opinion" of Dr. Austin and "wanted to disqualify" him as an expert witness. This assertion is belied by the record; the trial court specifically stated that it accepted Dr. Austin's testimony as an expert witness. We overrule the ninth assignment of error.

### Applicable Legal Standards

**{¶44}** In their tenth assignment of error, the Schultzes argue that the trial court erred by applying the wrong legal standards to their claims of medical negligence and lack of informed consent.

**{¶45}** The Ohio Supreme Court set forth the requirements for proving a medical malpractice claim:

> In order to establish medical malpractice, it must be shown by a
> preponderance of evidence that the injury complained of was caused by the
> doing of some particular thing or things that a physician or surgeon of

ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.

*Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

{¶46} The Supreme Court explained, "Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff." *Id.* at 131.

{¶47} In this case, the trial court determined that the Schultzes failed to prove that Dr. Dunsker's conduct fell below the standard of care for a neurosurgeon performing that type of surgery. The court properly applied the *Bruni* standard and found in favor of Mayfield.

{¶48} Moreover, as we discussed in our resolution of the seventh assignment of error, the trial court properly applied the *Nickell* standard in evaluating the Schultzes' lack-of-informed-consent claim. We overrule the tenth assignment of error.

### *Constitutionality of R.C. 2701.03*

{¶49} In their eleventh assignment of error, the Schultzes argue that the procedure in R.C. 2701.03 for the disqualification of a common pleas judge violates the Ohio and United States Constitutions. However, the failure to raise this issue in the trial court waives the issue on appeal. *See State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. Moreover, we find no constitutional infirmity in the statute. *See Bland v. Graves*, 99 Ohio

App.3d 123, 650 N.E.2d 117 (9th Dist.1994). We overrule the eleventh assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**HILDEBRANDT** and **FISCHER, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.