**[Cite as *Curley v. Wilcox*, 2023-Ohio-3507.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KEVIN J. CURLEY, et al. | : | |
| Appellants | : | Case No. 29587 |
| v. | : | Trial Court Case No. 2020 CV 00739 |
| KHAMERON D. WILCOX | : | (Civil Appeal from Common Pleas Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 29, 2023

. . . . . . . . . . .

THOMAS J. INTILI, Attorney for Appellants

ALAN R. TRENZ, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiffs-Appellants Kevin J. Curley and Virginia Curley (collectively "the Curleys") appeal from a judgment of the Montgomery County Court of Common Pleas, which enforced a jury verdict finding Defendant-Appellee Khameron Wilcox liable to Kevin Curley for economic and non-economic losses resulting from a traffic crash but rejecting

Virginia Curley's entitlement to damages on her loss of consortium claim. The Curleys argue on appeal that the trial court erred in refusing to remove certain prospective jurors for cause and that the jury verdict granting Mr. Curley significantly less damages than requested was against the manifest weight of the evidence. For the following reasons, we will affirm in part and reverse in part the judgment of the trial court and remand the case for a new trial to determine Mr. Curley's damages.

### I. Facts and Procedural History

{¶ 2} On February 11, 2020, the Curleys filed suit against Wilcox in the Montgomery County Common Pleas Court seeking compensation for personal injuries, medical expenses, lost income, pain, suffering, disability, and emotional distress that resulted from a traffic crash caused by Wilcox. The Curleys' complaint included causes of action on behalf of Mr. Curley alleging negligence per se and ordinary negligence and an action on behalf of Mrs. Curley alleging loss of consortium. The case proceeded to a jury trial at which Wilcox conceded that he was at fault in the collision. The only issues for the jury to decide were the extent of the injuries proximately attributable to the crash and the amount of damages to award.

{¶ 3} The underlying facts of the traffic crash are generally not in dispute. On February 12, 2018, Mr. Curley was operating a Kubota utility vehicle as part of his regular duties working for the University of Dayton. While he was stopped in traffic, Mr. Curley's vehicle was struck from behind by a 1998 Oldsmobile driven by Wilcox. The crash was a low-speed collision that caused some damage to the Kubota. Mr. Curley was taken by ambulance to the Miami Valley Hospital; he was diagnosed with whiplash and was treated

and released within a few hours.

{¶ 4} On the other hand, the parties strongly contested issues relating to the subsequent medical treatment Mr. Curley received after his release from the hospital and the point at which he had recovered from his injuries, if at all. At trial, each party presented an expert who testified via videotaped deposition regarding the necessity of the medical treatment that Mr. Curley had received and whether it had been proximately caused by the crash.

{¶ 5} The jury found in favor of Mr. Curley on the negligence claims, awarding him $5,000 for economic loss damages and $10,000 for non-economic loss damages. The jury returned a verdict in favor of Mrs. Curley on the loss of consortium claim but awarded her $0 in damages.

{¶ 6} The Curleys timely appeal and raise the following two assignments of error:

> THE TRIAL COURT ERRED BY FAILING TO EXCUSE FROM THE JURY TWO AUTOMOBILE POLICYHOLDERS OF ALLSTATE INSURANCE COMPANY FOR CAUSE.

> THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## II. First Assignment of Error

{¶ 7} In their first assignment of error, the Curleys contend that the trial court committed reversible error in failing to remove prospective jurors for cause who were Allstate Insurance Company ("Allstate") policyholders. According to the Curleys, because Wilcox was represented by an attorney for Allstate, which information would be

made known to the jury during trial, any potential juror who was an Allstate policyholder should have been excluded from the jury for cause. We disagree.

{¶ 8} Wilcox was covered by an automobile insurance policy with Allstate. As a result, an Allstate attorney represented Wilcox during the trial, and the defense's expert witness was hired by Allstate. Prior to trial, Wilcox filed a motion in limine asking, among other things, that the Curleys be prohibited from introducing evidence of or referring to the availability or non-availability of liability insurance. Wilcox anticipated that the Curleys would reference the existence of liability insurance either directly or indirectly by referencing defense counsel's employer, Allstate. The trial court granted the motion in part and denied it in part as it related to the admissibility of evidence about liability insurance. The trial court found that the Curleys could offer evidence of liability insurance under Evid.R. 411 to show bias or prejudice of the defense expert. However, the trial court prohibited admitting any evidence as to whether Wilcox had had liability insurance at the time of the collision.

{¶ 9} Presumably sometime prior to trial, there was a discussion between the parties and the trial court regarding potential jurors who had Allstate policies. Although that discussion is not in the record, it is apparent that, as a result of the conversation, the trial court, rather than the parties, inquired of the prospective jurors during voir dire whether any of them had Allstate insurance. Three prospective jurors affirmed that they did. However, none of the prospective jurors were either employed by or represented Allstate.

{¶ 10} Prior to the Curleys' opportunity for voir dire, a sidebar was held wherein

counsel for the Curleys asked whether the prospective jurors who had Allstate insurance would be dismissed for cause at that time or if they would be sitting in during jury selection. The following discussion occurred:

THE COURT:   It kind of depends on their answers.   I mean.   I -- I'm not sure I see -- I'm not sure I see the covered by Allstate as necessarily cause. They can be for or against their insurance company, depending on their life experiences.   Some people love their insurance company.   Some people hate their insurance company.   So I don't know.   I don't know that I see it necessarily.   If they were representing or working for Allstate, I would see that.   But I don't know that just being covered by insurance company is cause itself.

MR. INTILI [PLAINTIFFS' COUNSEL]:   The concern that I have is the one that was raised in the *Edd* (phonetic) case in the Supreme Court about there being some sort of identification between -- in that case the expert and the insurance company expert was also insured by the insurance company that was ensuring the defendant doctor.

THE COURT:   Okay.

MR. INTILI:   And the concern in that case was that they might be some identification with the fellow P.I.E. (phonetic) insurer, P.I.E. was the physician's insurance exchange in that case, and it was also the -- the court, the concern that was raised in *Edd* was that a -- an expert might be biased in his testimony because -- out of concern that his insurance premiums may

go up if he would testify.

THE COURT: But you're -- all this is about the -- all this is about potential bias about an expert, right?

MR. INTILI: That's -- that's correct.

THE COURT: And we're talking about -- we're talking about the jury, right?

MR. INTILI: That's true. And -- but I'm not sure that it matters whether it's an expert or a juror. In fact, I think that with a juror it's even more -- of more concern because the jurors can submit judgment in the case. The expert is just a random case.

THE COURT: You have a case that says that if a juror is insured by an insurance company and the insurance company is liable as a backup, not a party but involved somehow in a case, that's automatic cause for excusing?

MR. INTILI: I don't. But in most cases insurance isn't admissible. It isn't admitted. That's the difference.

THE COURT: And we aren't talking about insurance. We're talking about insurance companies.

MR. INTILI: Right. We're talking about whether an Allstate insurer --

THE COURT: Um-hum.

MR. INTILI: -- should sit in judgment on a case where Allstate is providing the coverage.

THE COURT: Yeah. But again, I -- some people love their insurance

company. Some people hate it. I just -- I don't see it as an automatic. Any comments from counsel?

MR. HASSAN [DEFENSE COUNSEL]: I mean, as peremptory challenges, I think we can question them all because that will make them more or less biased.

THE COURT: Um-hum.

MR. HASSAN: So I don't think it's a for cause. I apologize; I didn't do the research in advance of what exactly justifies for cause, but I don't that is a for cause.

THE COURT: Yeah, I think if we were to start automatically for cause dismissing jurors just because they're covered by somebody, that would drastically narrow the --

MR. HASSAN: And if I may, Your Honor, if that's the route that we're going to take, then I think I have a duty too to see if anybody's siding with Mr. Curley's insurance company.

THE COURT: Well, right. I --

MR. HASSAN: That's reopening. I mean, that's not relevant.

MR. INTILI: Of course, nobody knows who Mr. Curley's insurance company is as is --

MR. HASSAN: Because it's not relevant in this matter.

MR. INTILI: -- nor will they either way.

THE COURT: The insurance company really comes in for the bias of the

witness. And so I understand what you're -- I understand you're making your points, but I don't see -- I don't see that someone's necessarily covered by insurance company as either being indicia of bias one way or the other. And maybe they just signed up last week, or maybe they've had insurance company for 20 years. I don't -- it's just too nebulous. So I'm not going to dismiss them for cause automatically, although you're certainly free to inquire, if you want, about their feelings of the insurance -- about their -- about the insurance company.

MR. HASSAN: No, and if they come back and say they -- you know, maybe we'll approach that if they say they can't be fair and impartial --

THE COURT: Yeah, if they say they can't be fair and impartial.

MR. HASSAN: -- if they really feel it, Mr. Intili will agree that it's for cause. I don't want --

MR. INTILI: I'm sorry. Perhaps I misunderstood. I thought the whole purpose for that question coming from the bench, not from the counsel, was because the Allstate insurance will not be receiving judgement in this case.

THE COURT: Well, then you misunderstood because the purpose was to help you move along voir dire so that you can know who to question.

MR. INTILI: Okay. Yeah. All right.

(Grammatical, spelling, and punctuation errors sic.) Tr. 14-18.

{¶ 11} During voir dire, counsel for the Curleys specifically questioned those potential jurors who had admitted to being insured by Allstate about whether they could

remain fair and impartial in the case. The only response given was "yes." Tr. 26. No further questions were asked by either party relating to Allstate.

{¶ 12} At the conclusion of voir dire, the trial court asked if anyone had challenges for cause. The following discussion occurred:

MR. INTILI: Well, I don't think Allstate insurance belong in this jury. And I think I've made that pretty clear so far. And I made that comment based purely on their – purely on the fact that they are Allstate insurance. And the grounds are those I think which were stated in the *Edd*, the *Davis* (phonetic), and the *Kramer* (phonetic) cases, which although it applied to the expert witness in those three cases, I think it applies equally to jurors and --

THE COURT: I believe your co-counsel asked if anybody insured by Allstate could be unbiased and fair. And I believe they all --

MR. INTILI: Correct. And the[y] all declared they could, so.

THE COURT: Right. So with that, I believe you're about ready to request a challenge for cause for Allstate insurers; is that right?

MR. INTILI: Yeah. Jurors 11, 13, and 14, I would move for -- too that they be excluded for cause.

THE COURT: Any response, Counsel?

MR. HASSAN: Everything we've mentioned already, Your Honor, I don't think that is a for-cause challenge to dismiss a juror. And again, they answered that question that said they would be fair and impartial. So I

would disagree with that.

THE COURT: The Court agrees with that and does not find that merely having Allstate insurance as an insurance company is cause for dismissal.

(Grammatical, spelling, and punctuation errors sic.) Tr. 44-45. Accordingly, the trial court refused to dismiss the three prospective jurors insured by Allstate for cause.

{¶ 13} The Curleys used two peremptory challenges on non-Allstate prospective jurors and their final peremptory challenge on a juror who had Allstate insurance. The Curleys now contend that allowing the remaining two jurors who had Allstate insurance to stay on the jury resulted in a trial that violated their right to an impartial jury. According to the Curleys, a policyholder of an insurance company should be absolutely disqualified constitutionally and statutorily from sitting in judgment of a policyholder of the same insurance company. Appellants' Brief, p. 11. Although the Curleys cite to the Seventh Amendment of the United States Constitution, the Curleys make no argument which would identify their claim that they were denied a fair trial or a fair and impartial jury as a federal constitutional claim rather than as a state claim. Nor did they raise an equivalent claim in the trial court. Accordingly, our analysis is constrained to state law.

{¶ 14} "Section 5, Article I of the Ohio Constitution guarantees the right to a trial by jury, and this right 'carries with it by necessary implication the right to trial by a jury composed of unbiased and unprejudiced jurors.' " *State v. Hessler*, 90 Ohio St.3d 108, 133, 734 N.E.2d 1237 (2000), quoting *Lingafelter v. Moore*, 95 Ohio St. 384, 117 N.E. 16 (1917), paragraph one of the syllabus. "To safeguard this right and to define in a measure what shall constitute an impartial jury in the trial of civil cases," the General

Assembly identified specific grounds under which a party may challenge a prospective juror for cause. *Lingafelter* at 347. Said grounds for jurors in a civil trial are codified in R.C. 2313.17.

{¶ 15} The Curleys rely on R.C. 2313.17(B)(2) and 2313.17(D) in support of their argument. R.C. 2313.17(B) provides a list of potential principal challenges for cause. "A principal challenge is one 'where the cause assigned carries with it *prima facie* evident marks of suspicion either of malice or favor * * *, which, if true, cannot be overruled, for jurors must be *omni exceptione majores'* (above all challenge)." *Hall v. Banc One Mgt. Corp.*, 114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290, ¶ 28, quoting 2 Blackstone, Commentaries on the Laws of England, 363. "The principal challenges to prospective jurors incorporated into [R.C. 2313.17(B)(1) through (8)], which are tried to the court, establish a conclusive presumption of disqualification if found valid. The court must dismiss the prospective juror and may not rehabilitate or exercise discretion to seat the prospective juror upon the prospective juror's pledge of fairness." *Id.* at syllabus. This is because where a party establishes the existence of facts supporting a principal challenge, this finding results in automatic disqualification, and there is no possibility for a potential juror to be rehabilitated. *Id.* at ¶ 28.

{¶ 16} Pursuant to R.C. 2313.17(B)(2), a prospective juror may be challenged for cause if "the person has an interest in the cause." The validity of any such principal challenge must be evaluated by the court. R.C. 2313.17(C). If such principal challenge is found valid by the court, the trial court must excuse the prospective juror, and the trial court lacks any discretion to allow the prospective juror to remain.

{¶ 17} R.C. 2313.17(D) provides that a prospective juror "may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror. Under this category of challenge, a party may assert a challenge for cause when no principal challenge exists but the party objects to a potential juror based on some perceived bias or other infirmity. "The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." *Id.* Accordingly, R.C. 2313.17(D) "requires the court to make a subjective determination about a potential juror's fairness and impartiality and therefore requires the exercise of judicial discretion." *Banc One Mgt. Corp.* at ¶ 1. "The determination of whether a juror is impartial or biased involves a judgment of credibility, which may not be apparent from the record on appeal. Therefore, a reviewing court will defer to the trial judge who sees and hears the juror." *Hunt v. E. Cleveland*, 2019-Ohio-1115, 128 N.E.3d 265, ¶ 37 (8th Dist.). Under these circumstances, "[t]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). An abuse of discretion has been defined as "conduct that is unreasonable, arbitrary or unconscionable." *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} The Curleys argue on appeal that under R.C. 2313.17(B)(2), the prospective jurors with Allstate policies had "an interest in the cause." According to the

Curleys, simply by learning that the defendant was also an Allstate policyholder, "the prospective jurors had a self-interest * * * advanced by limiting Allstate's liability, and their prospect of a premium increase." Appellants' Brief, p. 14. Alternatively, they argue that the prospective jurors should have been excused for cause based on subdivision (D), "based on a reasonable suspicion of prejudice against the Curleys." *Id.*, p. 14.

{¶ 19} "The right to examine prospective jurors on their voir dire is granted to litigants in order to enable them to select a jury composed of men and women qualified and competent to judge and determine, without bias, prejudice, or partiality, facts in issue." *Dowd-Feder v. Truesdell*, 130 Ohio St. 530, 533, 200 N.E. 762 (1936). "[W]hen the statute states that the validity of the challenge is to be tried to the court, this necessarily implies that the proponent of the challenge must present evidence to carry the burden of proof of the 'princip[al] challenge' to be established." *Parusel v. Ewry*, 6th Dist. Lucas No. L-02-1402, 2004-Ohio-404, ¶ 39. *Accord Banc One Mgt. Corp.*,114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290, at ¶ 28 (stating that "*where a party establishes the existence of facts supporting a principal challenge* this finding 'result[s] in automatic disqualification,' and no rehabilitation of the potential juror can occur.") (Emphasis added.). Accordingly, the burden was on the Curleys to produce evidence that the prospective jurors had an interest in the cause.

{¶ 20} In order to determine whether the trial court erred in denying the Curleys' request to remove the prospective jurors for having an interest in the cause, we must analyze whether the Curleys established the existence of facts supporting a valid principal challenge under R.C. 2313.17(B)(2), which would have required automatic

disqualification as a juror. The Curleys requested that the prospective jurors be dismissed for cause "purely on the fact that they [had] Allstate insurance." Tr. 44. The only information obtained during voir dire was that three prospective jurors were "insured by Allstate insurance company." There was no further inquiry as to the type of insurance the prospective jurors had with Allstate, e.g., homeowners' insurance, car insurance, life insurance, etc., which could potentially reflect having a financial interest in the outcome of the case. There is no evidence in the record that any potential juror had a relationship with Allstate that would have resulted in a demonstrable, direct financial interest in the outcome of the case. There is also no evidence in the record that the amount of damages sought in this trial would have had any effect on insurance premiums for policyholders of Allstate's or that the prospective jurors believed the result of the trial could affect their own premiums. When the prospective jurors were specifically asked if they could be fair and impartial despite having Allstate insurance, the only response given was "yes." Moreover, in other questioning, the jurors indicated that they could be fair and impartial and follow the law.

{¶ 21} It was the duty of the Curleys to develop such evidence through voir dire. Absent any evidence beyond mere speculation to demonstrate that the prospective jurors had an interest in the cause, we cannot conclude that the trial court erred in denying the Curleys' principal challenge to remove the prospective jurors pursuant to R.C. 2313.17(B)(2).

{¶ 22} Alternatively, the Curleys contend that the prospective jurors were inherently biased and should have been excluded under R.C. 2313.17(D). While

acknowledging that there are no cases directly on point, the Curleys encourage this Court to look to cases analyzing Evid.R. 411 to support their position that the prospective jurors who had Allstate insurance were inherently biased. Specifically, the Curleys cite to *Ede v. Atrium S. OB-GYN, Inc.*, 71 Ohio St.3d 124, 642 N.E.2d 365 (1994), *Kremer v. Rowse*, 2d Dist. Montgomery No. 21311, 2006-Ohio-992 ("*Kremer I*"), *Kremer v. Rowse*, 2d Dist. Montgomery No. 21311, 2006-Ohio-2336 ("*Kremer II*"), and *Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 684 N.E.2d 292 (1997).

{¶ 23} Evid.R. 411 states that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness." Thus, while evidence of insurance is not admissible upon the issue of liability, Evid.R. 411 does not require exclusion of evidence of insurance liability when offered to show bias or prejudice of a witness. The Curleys seem to contend that if liability insurance coverage can be admitted to probe the potential bias of an expert witness, then a prospective juror who has a policy with the same liability insurance company as the defendant likewise must be biased. Accordingly, they ask this Court to adopt a bright line rule that any prospective juror who has an insurance policy with the same company as the defendant, regardless of the type of policy the juror has, must be excused for cause when disclosure of the liability insurance company is anticipated to occur at trial, even if that prospective juror states that he or she will be fair, impartial, and will follow the law. We decline to adopt

such a rule.

{¶ 24} In *Ede* and *Davis*, the concerns revolved around the disclosure of liability insurance during the cross-examination of expert witnesses. In *Ede*, a medical malpractice action, the defendant filed a motion in limine prior to trial seeking to exclude from trial any mention of malpractice liability insurance. It was anticipated that at trial, the defendant doctor and other physicians would testify in favor of the defense. Plaintiffs argued that these defense witnesses, however, were insured by the same mutual insurance company as the defendant doctor, meaning that each insured's policy was evidence of some fractional part ownership of the insurance company. Accordingly, if medical malpractice claims were unsuccessful at trial, meaning that if the insured defendants won, the doctors would have lower premiums charged for malpractice insurance. Because the doctors would have an incentive to testify in favor of other doctors also covered by the same malpractice liability insurance, according to the plaintiffs, their testimony was inherently biased. *Ede* at 124.

{¶ 25} The trial court precluded plaintiff from asking any questions relevant to insurance under an Evid.R. 403 analysis, finding that the prejudice substantially outweighed the probative value of the testimony. *Id.* at 125. The Ohio Supreme Court disagreed and held that the plaintiff should have been able to elicit testimony at trial regarding the commonality of insurance interests between the defendant and the physicians testifying as experts on the defendant's behalf. The Supreme Court held that "evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential

prejudice evidence of insurance might cause." *Id.* at syllabus. The Supreme Court cited two reasons in support of its conclusion: (1) the trial court failed to consider the potential for the expert's personal bias resulting from being a fractional part-owner of the same mutual insurance company as the defendant, in that the expert's own premiums might fluctuate due to the outcome of the case; and (2) the trial court had grossly overestimated the extent to which the testimony that the defendant was insured would prejudice the jury. *Id.* at 127. The Court explained:

> The second sentence of Evid.R. 411 exists for a reason—it recognizes that testimony regarding insurance is not always prejudicial. However, too often courts have a Pavlovian response to insurance testimony—immediately assuming prejudice. It is naive to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. Our Rules of Evidence are designed with truth and fairness in mind; they do not require that courts should be blind to reality.

*Id.*

{¶ 26} In *Davis*, 80 Ohio St.3d 10, 684 N.E.2d 292, another medical malpractice case, the Ohio Supreme Court again considered the potential bias of expert witnesses regarding insurance coverage. During the trial in *Davis*, a defense expert witness

disclosed to the parties that he was insured by the same mutual insurance company as some, but not all, of the named defendants. *Id.* at 15. The trial court denied plaintiff's request to question the expert witness concerning his insurance coverage to show bias. Following a verdict in favor of all but one of the defendant doctors, plaintiffs appealed. With the exception of one named hospital defendant against whom plaintiffs were granted default judgment, the Supreme Court ordered a new trial of the remaining defendants who had been found non-liable. The Court held that, "[i]n an action for medical malpractice, an expert witness having the same malpractice insurer as another defendant is subject to inquiry concerning bias if the witness testifies favorably for that defendant." *Id*. at 16. Thus, where there are multiple defendants, if the expert witness has a commonality of insurance with any of the named defendants, and if that expert's testimony would benefit those defendants, the plaintiff may elicit evidence of potential bias based on the commonality of insurance. *Id*. at 17-18.

{¶ 27} In *Kremer I*, 2d Dist. Montgomery No. 21311, 2006-Ohio-2336, this Court applied *Ede* and *Davis* to the cross-examination of an expert in a personal injury setting. *Kremer I* was a personal injury action arising from an automobile accident. *Id.* at ¶ 1. Prior to trial, the defendant, who was represented by Allstate insurance, sought to preclude the plaintiff from making any reference to liability insurance. Plaintiff argued he was entitled to demonstrate that defendant's medical expert was biased in favor of Allstate because he performed multiple reviews for Allstate each year, was paid for his services directly by Allstate, and correspondence with Allstate contributed to his opinion regarding plaintiff. *Id.* at ¶ 5. At trial, the court excluded portions of the defense expert

witness's testimony involving testimony related to Allstate. The jury found in favor of the defendant and awarded no damages to the plaintiff. Plaintiff appealed, arguing that the trial court erred when it denied him the opportunity to cross-examine defendant's medical expert about his relationship with Allstate, defendant's automobile liability insurer. *Id.* at ¶ 5, 8.

{¶ 28} This Court found that the trial court had erred in redacting portions of defendant's medical expert's cross-examination relating to liability insurance. *Id.* at ¶ 19. We noted that an expert may obtain a significant financial benefit from a continuing relationship with an insurance company and might look at claims more favorably to the insurance company so that the company would continue to consult with that expert. *Id.* at 16-17. However, we did not find that the exclusion of the cross-examination testimony constituted reversible error, finding there was no reasonable probability that the outcome of the trial would have been different had the entirety of the cross-examination been viewed by the jury. *Id.* at ¶ 20.

{¶ 29} Following plaintiff's motion for reconsideration, we reversed course and determined that there was a reasonable possibility that the verdict would have been different had the jury been informed of the expert's relationship with Allstate. *Kremer II*, 2d Dist. Montgomery No. 21311, 2006-Ohio-2336, at ¶ 6. Accordingly, we reversed and remanded the case to the trial court for a new trial. *Id.* at ¶ 10.

{¶ 30} The Curleys argue that the cases discussed above demonstrate that, where a significant and ongoing business or economic relationship between an expert witness and an insurance company alone manifests bias and the expert is presumed to harbor

such bias, then this same bias should extend to prospective jurors who are policyholders of the same liability insurance company as the defendant. We do not agree.

{¶ 31} First, there is no presumption that an expert witness with a commonality of insurance is biased. As the Supreme Court of Ohio explained, "[w]here an expert has a financial incentive to be biased, the jury may determine *whether that bias exists* and how that bias affects all defendants who are contesting similar issues and who benefit from the expert's testimony, regardless of commonality of insurance." (Emphasis added.) *Davis*, 80 Ohio St.3d 10, 684 N.E.2d 292, at paragraph three of the syllabus.

{¶ 32} Secondly, jurors do not have the same relationship with insurance companies as an expert witness. An expert witness may benefit from repeatedly testifying in favor of a party such that they have a bias to find in that party's favor and continue the relationship in order to receive additional payments. *Kremer I* at ¶ 17. Or, as in the case of *Ede*, a commonality of mutual insurance between a defendant and an expert witness in medical malpractice actions could affect the testimony of the expert to avoid increases in premiums based on the outcome of the case. But where a prospective juror is merely a policyholder of a liability insurance company, his or her connection to the company is nothing more than a contract with the company, creating no interest in its assets, and the juror is no more potentially biased than would be a depositor in a bank that were party to litigation or a taxpayer in a city that were party to litigation.

{¶ 33} In *Maddex v. Columber*, 114 Ohio St. 178, 151 N.E. 56 (1926), the Ohio Supreme Court examined challenges for cause in a negligence case in which a

municipality was a defendant. There, the plaintiff contended that a juror, solely by virtue of being a taxpayer, had "an interest in the cause" or bias that disqualified him for good cause because a verdict against the defendant municipality could potentially increase taxes. The Supreme Court rejected this argument, holding that:

> if a proposed juror otherwise qualified expresses himself as being able to render a fair and impartial verdict on the evidence and under instructions of the court as to the law, regardless of the fact that he is a taxpayer in a municipality which may be a party to an action, and the trial court is satisfied that the proposed juror is entirely unbiased and has no prejudice against or partiality for either party by reason of being a taxpayer, and overrules an objection to said juror upon such ground, and permits him to serve as a juror in the case, such action of the trial judge should not be reversed for error in so doing.

*Id.* at 184. Thus, being a juror in a case where the outcome of the case could potentially raise the juror's own taxes did not per se disqualify the juror from service. We believe the analysis in *Maddex* likewise applies here.

{¶ 34} In the case at bar, when considering whether the prospective jurors were biased under R.C. 2313.17(D), the trial court denied the Curleys' request to remove them for cause, finding that the jurors could be fair and impartial based upon their responses. "Questions on voir dire must be sufficient to identify prospective jurors who hold views that would prevent or substantially impair them from performing the duties required of jurors." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 57,

citing *Morgan v. Illinois*, 504 U.S. 719, 734-735, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). "The party 'seeking exclusion [of a prospective juror] must demonstrate, through questioning, that the potential juror lacks impartiality.' " *State v. Quinn*, 2017-Ohio-7000, 95 N.E.3d 664, ¶ 17 (2d Dist.), quoting *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Yet nothing in the record demonstrates that the prospective jurors at issue here lacked impartiality despite the fact the Curleys had an opportunity to develop such evidence, if it existed, through voir dire.

{¶ 35} We cannot conclude that prospective jurors are inherently biased solely because they happen to have an insurance policy with the same company defendant used to insure his automobile. The connection is far too nebulous and indirect to construct a bright line rule that all prospective jurors who are policyholders of the same insurance liability company utilized by the defendant, even when evidence of the liability insurance is introduced at trial, must be excused for bias. Because there is no evidence in the record to support any for cause challenge to the prospective jurors under R.C. 2313.17(D), we overrule the Curleys' first assignment of error.

### III.   Second Assignment of Error

{¶ 36} In their second assignment of error, the Curleys challenge both the economic and non-economic damages awarded by the jury.[1]   According to the Curleys, "the only evidence of economic loss admitted at trial was Mr. Curley's medical bills." Appellants' Brief, p. 18.   The Curleys argue that if the jury believed defendant's argument that Mr. Curley's injuries had resolved within a few weeks of the collision, then the total

---

[1] The Curleys do not challenge the jury's award of $0 to Mrs. Curley for loss of consortium.   Therefore, we will not address the loss of consortium claim in this appeal.

medical bills would have been less than the $5,000 the jury granted. On the other hand, if the jury believed plaintiff's position that all the medical bills up to the time of trial were attributable to the collision, then the total medical bills would have been just over $22,000. Accordingly, the Curleys contend that the jury's economic damages award of $5,000 was arbitrary and cannot be reconciled with the evidence or the parties' positions. Additionally, the Curleys contend that the non-economic damages awarded by the jury were "illogical and capricious" because the testimony of Wilcox's expert was not credible.

### a. Standard of Review

{¶ 37} "Under the manifest-weight-of-the-evidence standard the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice." (Citation omitted.) *Charles v. Peters*, 2d Dist. Greene No. 2015-CA-52, 2016-Ohio-1259, ¶ 10. In determining whether the judgment below was manifestly against the weight of the evidence, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. Accordingly, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." (Citation omitted.) *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

### b. Compensatory Damages

{¶ 38} "The fundamental rule of the law of damages is that the injured party shall

have compensation for all of the injuries sustained. Compensatory damages are intended to make whole the plaintiff for the wrong done to him or her by the defendant." (Citations omitted.) *Fantozzi v. Sandusky Cement Prod. Co.*, 64 Ohio St.3d 601, 612, 597 N.E.2d 474 (1992). Compensatory damages measure actual loss and allow recovery for direct pecuniary losses resulting from an injury such as "hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering." *Id*. "Some of these elements of damages, such as the costs and expenses of the injury and loss of time from employment, entail only the rudimentary process of accounting to calculate. Other elements such as pain and suffering are more difficult to evaluate in a monetary sense. The assessment of such damage is, however, a matter solely for the determination of the trier of fact because there is no standard by which such pain and suffering may be measured." *Id*.

{¶ 39} Compensatory damages include both economic and noneconomic damages. *Whitaker v. M.T. Auto., Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 19, citing *Fantozzi* at 612. "Economic loss" means any of the following types of pecuniary harm:

(a) All wages, salaries, or other compensation lost as a result of an injury or loss to person or property that is a subject of a tort action;

(b) All expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations as a result of an injury or loss to person or property that is a subject of a tort action;

(c) Any other expenditures incurred as a result of an injury or loss to person or property that is a subject of a tort action, other than attorney's fees incurred in connection with that action.

R.C. 2315.18(A)(2)(a)-(c).

{¶ 40} "Noneconomic loss," on the other hand, includes "nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss."   R.C. 2315.18(A)(4).

{¶ 41} R.C. 2315.18 provides a basic procedure for the imposition of damages in certain tort actions such as the one at bar.   *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 27.   As applicable here, once the verdict was reached for the plaintiff, the jury was required to return a general verdict accompanied by answers to interrogatories specifying both the total compensatory damages recoverable by the plaintiff and the portions of those damages representing the economic and non-economic losses.   R.C. 2315.18(D)(1) through (3).   In this case, the jury returned a verdict in Mr. Curley's favor awarding $5,000 for economic damages and $10,000 for non-economic damages.

### c. Economic Damages

{¶ 42} This case did not involve a determination of negligence or any compensation for property damage, and there was no dispute that Mr. Curley was injured

to some degree as a result of the crash. The points of contention at trial were the extent to which Mr. Curley's injuries were incurred as a direct and proximate result of the crash and the amount of compensation to which he was entitled.

{¶ 43} Mr. Curley challenges the economic damages as being against the manifest weight of the evidence. "In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." *Bailey v. Allberry*, 88 Ohio App.3d 432, 435, 624 N.E.2d 279 (2d Dist.1993).

{¶ 44} It is not necessarily unusual for a plaintiff who obtained a jury verdict in his or her favor to argue that the verdict was against the manifest weight of the evidence. Generally, this occurs when the plaintiff contends that the jury's award was too low based on the evidence submitted at trial. The unusual factor present here was that there was no evidence presented to the jury on which the jury could have based a reasonable calculation of damages. The evidence reflected that Mr. Curley was injured as a result of the crash and was taken by ambulance to an emergency room, where he was diagnosed with whiplash. There was no dispute by the parties that this initial medical treatment was proximately related to the crash and reasonably necessary. Whether the medical treatment received by Mr. Curley after his initial trip to the emergency room and the follow-up treatment immediately thereafter was proximately related to the crash and reasonably necessary was highly contested at trial. Thus, while a reasonable juror would

have found that the economic damages most likely were more than $0, there was nothing in the record to identify an amount that was not inherently speculative. "[I]n Ohio, a tort recovery may not be had for damages which are speculative." *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 58, 540 N.E.2d 1370 (1989).

{¶ 45} While economic damages can include more than just medical bills, the parties argued during closing argument that the economic loss should be entirely based on medical bills already incurred. Thus, where Mr. Curley alleged his economic damages were based solely on his medical bills, the amount of economic damages could have been determined by a basic accounting of those bills. *Fantozzi*, 64 Ohio St.3d at 612, 597 N.E.2d 474. "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services." *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984), paragraph one of the syllabus. "Thus, either the bill itself or the amount actually paid can be submitted to prove the value of medical services." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 7.

{¶ 46} Unfortunately, no medical bills were submitted as evidence and no testimony was presented during the entirety of the trial regarding the amount of medical bills incurred and/or paid. The only mention of bills occurred during Mrs. Curley's testimony, when she was asked on direct examination what she would like to see happen in the case. She responded, "I would like to see all the bills that we have accumulated so far be paid[.]" Tr. 297. However, this generic reference to "bills" did not identify

whether the bills they had accumulated were in fact medical bills or whether they were proximately related to the crash. Further, this testimony in no way assisted the trier of fact in determining an amount of damages, because no dollar amounts were introduced into evidence.

{¶ 47} It is apparent from the record that the parties intended to submit a joint exhibit that included all the medical bills, similar to what was done for the medical records. After opening statements but before the first witness testified, a discussion was held at sidebar wherein the trial court inquired into the exhibits of the parties. Defense counsel stated that there was a joint exhibit of all the medical bills, and plaintiff's counsel stated he would have them printed out. Tr. 86-87. Regrettably, either the bills were never printed out, or they were printed out but never submitted into evidence.

{¶ 48} Despite this, during closing arguments, counsel for plaintiff discussed a four-page document summarizing the medical bills and listing each of the providers, the dates of service, the amounts billed, and the amounts accepted for payment. Tr. 380, 400. Plaintiff's counsel explained that the total amount of medical expenses incurred between the time of the crash in 2018 and the time of trial in 2022 amounted to $22,106.70 and asked the jury to award that amount for economic loss. Defense counsel never objected to the use of the four-page medical bill summary during closing arguments and in fact used it to make arguments to the jury during defense counsel's closing argument. Although he also utilized plaintiff's four-page document summarizing the medical bills, defense counsel conversely argued that only the medical bills incurred from the time of the crash on February 12, 2018, until March 26, 2018, should be awarded. Additionally,

defense counsel argued that only the amount accepted as payment in full should be considered, not the full amount of the bills themselves. Based on the amounts actually paid in the four-page document for the designated time frame, defense counsel proposed that the jury should award $2,511.74 for economic damages. Tr. 401.

{¶ 49} The jury returned an award of $5,000 for economic damages, a number in between the amounts each counsel entreated, albeit closer to the amount suggested by defense counsel. The four-page document discussed during closing arguments was not evidence, was not based on any previously admitted evidence, and was not itself submitted into the record. While parties are given wide latitude in closing arguments to comment upon the evidence presented at trial, including making all reasonable inferences from the evidence, closing arguments are not the proper forum to interject new evidence to the jury that was not properly admitted during trial. *Drake v. Caterpillar Tractor Co.*, 15 Ohio St.3d 346, 347, 474 N.E.2d 291 (1984).

{¶ 50} The jury was instructed that the opening and closing statements of counsel were not evidence and should not be considered as such. Tr. 419. A reviewing court will "ordinarily presume that the jury followed such an instruction by the court." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 92. Nevertheless, the presumption may be rebutted with a showing that the improper statements could not have been ignored and that serious prejudice likely occurred. *State v. Robinson*, 8th Dist. Cuyahoga No. 110883, 2022-Ohio-1940, ¶ 35, citing *Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), fn. 8. In the present case, we cannot presume the jury followed the instructions, because the only evidence introduced at trial about any

monetary amounts for medical expenses was during closing argument. Thus, the jury relied upon the closing arguments of counsel to reach its verdict, and the "evidence" it relied upon was not evidence admitted during the course of trial and could not properly be relied upon to support the jury's verdict. Under these unusual circumstances, we conclude that the jury's award of economic damages was against the manifest weight of the evidence, as it cannot be reconciled with the undisputed evidence (or lack thereof).

**{¶ 51}** Having determined that the jury's verdict for $5,000 of economic damages was against the manifest weight, the question remains what remedy is proper. Generally, where a verdict is found to be against the manifest weight of the evidence, the remedy is granting a reversal and remand to the trial court for a new trial. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 22 ("When a court of appeals determines that a jury verdict is against the weight of the evidence, it should remand the case for a new trial."). A jury's verdict should be reversed and remanded for a new trial when three judges agree that the verdict was against the manifest weight, but that outcome assumes that there was sufficient evidence to support the verdict in the first place. *See State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955) (Emphasis sic.) ("Where a Court of Appeals has decided that a verdict or finding * * * is against the weight of the evidence but where* * * this court has held that such a verdict or finding is sustained by *sufficient evidence*, such Court of Appeals has no power to modify such verdict or finding* * *. Its only power is to order a new trial.").

**{¶ 52}** As mentioned above, this case is unusual, and we have not discovered any case where the parties and evidence were similarly situated. Neither party appeared to

have realized at the time of trial that the medical bills had not been admitted into evidence. The defense neither made a motion for judgment notwithstanding the verdict nor requested a new trial. The plaintiff, not the defendant, appealed the verdict as being against the manifest weight of the evidence, and the defendant did not cross-appeal. Thus, we are left with a situation where there was insufficient evidence to support the verdict, but the defendant wants this Court to affirm the judgment. The plaintiff, on the other hand, had the burden to submit evidence of the amount of economic damages and failed to do so, and now seeks to benefit from this error by receiving a new trial. Interestingly, were we to affirm the verdict, Mr. Curley would arguably receive a windfall, because he would receive $5,000 in economic damages when the evidence submitted to the jury did not demonstrate any identifiable amount of damages.

{¶ 53} Nevertheless, while the evidence of economic damage did not support the economic damages amount, there was nominal evidence presented indicating that Mr. Curley should be entitled to at least some economic damages. Notably, the defense admitted as much during closing arguments, suggesting that the jury should award just over $2,500 for economic damages. Therefore, we believe the proper remedy in this case is to reverse the judgment and remand the cause for a new trial on economic damages.

{¶ 54} Similarly, we conclude that the economic and non-economic damages in this case were so intertwined as to necessitate a remand for a new trial on the non-economic damages as well. Considering that the jury awarded Mr. Curley $5,000 in economic damages and $10,000 in non-economic damages, exactly twice the amount of

economic damages, it appears that the jury relied upon a determination of the economic damages in order to settle on the non-economic damages. This supposition is supported by the fact that defense counsel encouraged the jury to award non-economic damages in an amount that was twice the amount of economic damages. But more importantly, the amounts determined by the jury were based on incompetent evidence and the improper arguments of counsel during closing arguments. Finally, in this case, the extent of non-economic damages was directly associated with the extent to which the jury could find that Mr. Curley's subsequent medical treatment was proximately related to the crash. Were we to remand for a new trial solely on the economic damages, this could lead to an inconsistent verdict. Thus, because the issues were sufficiently intertwined, we reverse the judgment of the trial court and remand the case for a new trial on the economic damages, here the medical expenses, as well as on the non-economic damages. Accordingly, we sustain Mr. Curley's second assignment of error.

## IV.    Conclusion

{¶ 55} We overrule the Curleys' first assignment of error but sustain Mr. Curley's second assignment of error. The portion of the judgment entered for Mr. Curley's economic and non-economic damages will be reversed and the cause remanded to the trial court for a new trial. We affirm the portion of the judgment entered finding Mrs. Curley was entitled to $0. In sum, the judgment will be affirmed in part, reversed in part, and remanded for a new trial to determine Mr. Curley's damages.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.